## GILLIAN v. SENTER.

1. The overseer of slaves under a contract with the master to supervise and direct their operations, must be considered to some extent as the representative of the master, and invested with authority to inflict *reasonable* punishment for a breach of police regulations; and this whether the offence of the slave is criminally punished by the law or not.
2. The master may maintain an *action of trespass* against an overseer, who inflicts cruel or immoderate punishment upon his slave.

Writ of Error to the Circuit Court of Cherokee.

THIS was an action of trespass at the suit of the defendant in error, for violently beating, bruising and ill-treating a negro man named Hamilton, belonging to him. The cause was tried on the plea of not guilty, a verdict was returned for the plaintiff, and judgment rendered accordingly. On the trial, a bill of exceptions was sealed at the instance of the defendant. It was shown on the part of the plaintiff, that the defendant whipped his slave with severity. The defendant then proved that he was the overseer of the plaintiff, and in the absence of his employer from the State, the slave, Hamilton, was detected in stealing from L. D. Griffiths, one of the plaintiff's neighbors, who thereupon brought him to the defendant, saying, " If you will correct this boy for the theft committed by him, I will not enforce the law against him." Whereupon Gillian inflicted the punishment of which the plaintiff complains as a trespass.

The court charged the jury, that if the defendant was the overseer, he had a right, from his general authority, to whip

the slave in a reasonable manner, in order to enforce obedience, and command his services for the benefit of his master. But the authority of the defendant as overseer, did not confer the right to whip the slave for stealing, or committing a crime, for which he might be punished by the laws of this State.

S. F. Rice, for the plaintiff in error. If the overseer may punish a slave of his employer for breaches of duty, which the law does not regard as criminal, surely he may inflict punishment for offences of greater enormity; the more especially while the master is absent from the State. That the overseer is answerable, if he inflict cruel or unusual punishment is not denied; but it is insisted that from the nature of his employment, and the character of our slave population, he is licensed to inflict punishment in all cases, liable only for the abuse of his authority. Taking this to be the law, the plaintiff has misconceived his remedy—he should have sued in case, and trespass will not lie. [8 Coke's Rep. 290; 43 L. Lib. 62, marg'l.] The charge of the Circuit Judge is altogether opposed to this view, and cannot be supported.

A. White, for the defendant in error, insisted that the overseer was not authorized to punish for offences against the criminal law; that such a power was opposed to public policy, and did not result from the nature of his employment. [9 Porter's Rep. 213-4.]

COLLIER, C. J.—The overseer of slaves, under a contract with the master, to supervise and direct their operations must be considered to some extent as standing *in loco magisteri;* and of necessity invested with the authority to inflict reasonable punishment for the breach of police regulations. What are, or should be, the disciplinary rules upon a plantation, it is very difficult to define, yet there are some points in respect to the government of slaves, in which perhaps all of us are agreed. It is certainly for the interest of the master, that the slave should be taught habits of industry; and as a moral, sentient being, should learn that his happiness depends upon the appreciation of virtue, and a conformity

to its precepts. If these sentiments cannot be inculcated by the force of moral suasion, it is certainly allowable, and it may be a duty to inflict corporal punishment.

If the master intrust the management of his slaves to a third person, it is the duty of the latter, not only to see that he is faithful in the performance of the labour assigned him, but to exercise such a restraint as will prevent him, as far as may be, from an indulgence in open immoralities. Neither drunkenness, profanity, or theft should be looked on with toleration; for a connivance at either of these, tends but to subvert a proper subordination and discipline, and in the end to worse consequences. As, then, it is the duty of the overseer to cause the observance of good order upon the plantation, it is scarcely necessary to add more, to prove that he is authorized to punish slaves placed under his supervision for offences against good morals. It cannot, we think, be important to inquire whether the offence is criminally punished by the law; for we can conceive of no warrant for thus limiting the power of the overseer. Such a limitation, we are sure, has not its foundation in policy. The good morals and quiet of the State are not concerned in the prosecution of every slave who may commit a larceny. So far as it concerns the public, it is quite as well, perhaps better, that his punishment should be admeasured by a domestic tribunal. Certainly this mode of procedure would be preferable for the master, as it would relieve him both from anxiety and the necessity of expending money.

Although the overseer has the legal right in the cases supposed, to punish slaves placed under his control, yet he is liable for the abuse of it, if he inflict immoderate punishment, and such as is cruel, or indicative of wanton and brutal feelings. Conceding this to be so, it is argued for the plaintiff in error, that as the initiatory step was not a trespass, the action in the present case should have been *case*, for the illegal consequences of an act rightfully commenced.

In Wheat v. Croom, 7 Ala. Rep. 349, an action of trespass was sustained by the master, for an assault and battery on a slave. It was also added, that "the measure of damages was not the actual injury sustained by the master in the loss of the service of the slave, but it was competent for the jury to

give vindictive damages, or as it is called, smart money."
*Further*, "The slave, although property, is also a moral agent,
a sentient being. As such is capable of mental, as well as
corporal suffering, and for this, as well as the evil example,
vindictive damages may be given."

In Helton v. Caston, 2 Bailey's Rep. 95, the plaintiff hir-
ed a female slave to the defendant for twelve months, with
the express stipulation not to beat or abuse her; before the
expiration of the time, the defendant did beat her cruelly, and
she returned to the plaintiff. It was held that trespass would
lie for the injury. The learned Judge who delivered the
opinion of the court, said, that slaves "are, by the operation
of our law, deprived of all personal rights, yet they are moral
agents, subject to the same feelings, and have a right to pro-
tection from abuse, as other human beings." It is further
said, that in White v. Chambers, 2 Bay's Rep. 70, an action
on the case was sustained for beating the plaintiff's slave,
without any objection to the form of the remedy. The prin-
ciple of that case, it is added, "has been acted on in a num-
ber of subsequent cases. In some of them the form of the ac-
tion was the question, as in Godard v. Wagner, 1 McC. 100;
Carston v. Murray, Harp. 113, in which trespass was held to
be the proper remedy. But they all, either impliedly or ex-
pressly, admit the right of the master to sustain trespass for
any battery of his slave."

It was conceded that the master transferred to the hirer
the right to have the services of the slave, for twelve months,
and the right to enforce obedience by moderate correction.
When he transcended and abused this right, the duty of pro-
tection, which remained in the master, entitled him to main-
tain any action that could be sustained by apprentices, or sea-
men, for immoderate punishment by their masters. It is,
there, insisted that persons standing in the seconditions, may
bring trespass against their masters, for punishing them for
revenge, or any other cruel or malicious motive. See also,
Brown and others v. Howard, 14 Johns. Rep. 119; 1 Chit.
Pl. 171.

The doctrine in respect to what acts will constitute one a
trespasser *ab initio*, does not apply in a case like the present.
While it is conceded that the overseer may inflict moderate

chastisement, in order to carry out the purposes of his employment, if the proof show that he has transcended this measure, the law will not justify him to any extent, but will regard his conduct as unwarranted *in toto*. The distinction taken in The Six Carpenters case, (8 Coke Rep. 290; 43 L. Lib. 62, marg'l,) and many subsequent decisions between the effect upon the remedy, of an abuse of authority given by the law, and one emanating from individuals is altogether inapplicable. Whether the master might not, for the infliction of cruel punishment upon his slave, by an overseer, or hirer, bring an action on the case, at his election, need not be considered. The case cited from 2 Bailey, very clearly intimates, that such action is maintainable, but that it does not follow that trespass will not also lie.

It results from what has been said, that the judgment of the Circuit Court must be reversed, and the cause remanded.