## GOODWIN v. McCOY.

1. When a party under the general issue, has the benefit of a defence set up by a special plea, he cannot complain of error in sustaining a demurrer to such plea.

2. At the time a bill of exchange was drawn, the drawer resided near Selma, where he had a plantation, and which was his nearest post office. That about two months before the maturity of the bill, he removed to Talladega county, with his family, some eighty miles distant, visiting his plantation occasionally, where his slaves remained; but there was no testimony, that the plaintiff, who resided in Mobile, knew of this removal, or of the residence of the drawer, further than might be inferred from his sending the notice to Selma. Held, that a notice of the dishonor of the bill, sent to him at Selma was sufficient, it not being shown that he had a fixed residence in Talladega.

3. H purchased bagging and rope from McC, who took his notes for the payment, and a bill of exchange as collateral security, and gave him a receipt, which stated the fact of the receipt of the bill as collateral security for the payment of the notes, and concluding, "the above acceptance of Thomas Haynes, to be given up on payment of above four notes." Held, that this did not make the bill conditional, or payable on a contingency, and that the proof of this fact was merely proving the consideration of the transfer of the bill.

Error to the Circuit Court of Dallas.    Before the Hon. E. Pickens.

ASSUMPSIT on a bill of exchange by the defendant in error against the plaintiff in error. The defendant pleaded seve-ral special pleas, to which the plaintiff demurred, and the court sustained his demurrer.

Upon the trial, as appears from a bill of exceptions, the defendent proved the bill in suit was made and dated in Mobile, and handed to one Haynes, in blank, to enable him to purchase bagging and rope. That he purchased a quantity of bagging and rope from the plaintiff, for the payment of which he executed his notes, and filled up the bill, and hand-ed it to the plaintiff as collateral security; the plaintiff at the same time executing to him a receipt, reciting the notes executed by Haynes, and that "the above acceptance of Thomas Haynes, was to be given up, on the payment of the above four notes."

It was in evidence, that the defendant was a planter, residing near Selma, at the time of the making of the bill of exchange, but that some two months before the maturity of the bill, he had permanently removed with his family to Talladega county, and was residing there at the maturity of the bill, and has resided there ever since. That his slaves made a crop near Selma, after his removal, he occasionally visiting his plantation. Notice of the dishonor of the bill was duly sent to Selma.

The defendant moved the court to charge, that there could be no recovery on the bill, until the plaintiff had employed due diligence to recover the notes of Haynes, which charge the court refused.

That if the bill was made for the accommodation of Haynes, and passed to the plaintiff as collateral security, he could not recover, unless he had employed due diligence to recover the notes of Haynes, which was refused.

That the facts as above stated, made the bill void in the hands of the plaintiff. That if, at the date of the bill, the defendant resided in Dallas county, that the bill was left with Haynes in blank, and he filled it up and dated it at Mobile, and passed it to the plaintiff, and that two months before the

maturity of the bill, he permanently removed with his family from Dallas to Talladega county, eighty miles distant from Selma, that a notice of the dishonor of the bill sent to Selma, was not sufficient. The defendant also repeated the facts stated in the last motion, for a charge, with the addition, that if the plaintiff had no knowledge of the defendant's former residence, or his removal, that then the notice sent to Selma was insufficient.

The court refused these charges, and charged in effect, that there was nothing in the testimony to prevent the plaintiff from recovering. The defendant excepted, and now assigns these matters, as well as the judgment of the court on the demurrers, for error.

W. H. FELLOWS, for the plaintiff in error.

From the testimony it appears, it was the intention of Goodwin to become the guarantor for Haynes, in the purchase of bagging and rope.

1. It is contended that no such intent can be collected from the face of the written contract. The whole agreement must be in writing, and must be signed by the party to be charged. Burge on Suretyship, 30, 31.

2. If the bill of exchange, on its face, cannot operate as a guaranty, there was no evidence to support the common counts. The bill of exceptions recites, that there was no evidence by any other witness, of any of the matters spoken of by Haynes.

3. The receipt given by the payee to the acceptor, rendered the payment of the bill of exchange contingent, and therefore void, as a bill of exchange. Chitty on Bills, 9 Am. ed. 154-5, and note, t.

4. The bill may be rendered contingent by a detached paper. Chitty on Bills, 9 ed. 160-1-2; Story on Bills, 46, § 34. The receipt entered into and formed part of the contract. If the entire contract had been on one piece of paper, it would be palpably no bill of exchange. The authorities say that it makes no difference that it is on two.

5. The bill was void, as such, in the hands of the payee. Chitty on Bills, 9 ed. 164-5; Robbins v. May, 39 E. C. L. 50, 51.

35

6. The holder was bound to use diligence to notify the drawer. Chitty on Bills, 525; Crawford v. The Bank, 7 Ala. Rep. 205; Story on Bills, 334, § 299; 331, 346, § 315; Blakely v. Grant, 6 Mass. 386.

7. It is no part of the duty of a notary to give notice, and no presumption can arise that he knew the drawer's place of residence.

8. If the notice of protest is sent to the wrong place, and no inquiry be made, the drawer will be discharged. Spencer v. Bank of Salina, 3 Hill's N. Y. Rep. 520.

9. The cases of McMurtre v. Jones, 3 W. C. C. R. 283, and Utica Bank v. Hall, 3 Wend. 408, are cited by the American editors of Bailey on Bills, at page, 283. Those cases show that some diligence was used to notify the party.

Judge Story has cited the same cases three times in his work on Bills of Exchange, § 297, 351, and he lays down a different rule from that laid down by the editors of Bailey on Bills. See also the case of Spencer v. Bank of Salina, 3 Hill's N. Y. Rep. 520.

The court below charged, that there was nothing in the testimony of Haynes to prevent the plaintiff from recovering, and that the notice of protest was sufficient. This charge was equivalent to charging, that if they believed the testimony they must find for the plaintiff. The charge was so understood by the court and the jury did not retire.

The written testimony of Haynes contained the written contract of McCoy, rendering the bill of exchange payable upon a contingency.

J. W. LAPSLEY, for defendant in error, made the following points:

1. As to the second plea, it is bad because it don't preclude the idea that the bill declared on was received by the plaintiff in the usual course of trade without notice. Nor does this plea alledge that the bill was written over the blank, or that the blank was used in making the bill.

2. The third plea is bad for want of an averment, that the blank to which the plea referrs was used in making this bill; nor is it stated in what manner the blank was used.

3. If the second and third pleas were good, still the defendant was not prejudiced by the judgment sustaining the demurrers, for the matter was good under the general issue, and the bill of exceptions shows, that the defendant had the the full benefit of the defence set up ; that no part of his evidence was excluded for want of pleas. McKenzie v. Jackson, 4 Ala. 230; Shehan v. Hampton, 8 Ib. 943.

4. The bill declared on, it is contended by the plaintiff in error, was a collateral, received for a pre-existing debt. This is not the case, as shown by the proof of the defendant in the court below. It is true, the witness, Haynes, in his deposition, set out in the bill of exceptions, calls it a collateral, and the plaintiff, in the receipt given by him to Haynes, speaks of the bill as collateral to certain notes of Haynes held by the plaintiff, McCoy. But that is not the criterion by which to judge of the character of the bill, which must be construed by the facts connected with its making and transfer, which are fully stated in the deposition of Haynes, the witness of the defendant, Goodwin.

5. Goodwin was originally liable on the bill to McCoy, who was under no obligation to bring suit against Haynes, to whom the credit in fact was not given. Haynes, as acceptor of the bill was bound to McCoy for the amount of the bagging and rope, so that there was no reason in any event why McCoy should wish his notes, which were given, as Haynes states, for his own accommodation. See Swift v. Tyson, 16 Peters, 1, and Holcombe's Leading Cases, 224.

6. Under the facts as presented by the bill of exceptions, it is considered wholly unnecessary to discuss the point, whether paper received in the usual course of trade, as collateral to a pre-existing debt, and without other consideration would be valid and binding on the maker.

7. If a merchant receives a blank, to be used in his purchases, without restriction as to the manner of its use, and he does use it as a security in making his purchases, the maker is bound to the holder so receiving it. This we think is very clearly a correct legal proposition, and applies to the case.

8. As to the special charges asked by the defendant below, founded on the supposition that the bill declared on

Goodwin v. McCoy.

was received by the plaintiff merely as collateral security to a pre-existing debt of Haynes, they were properly refused, if for no other reason, because they were abstract and founded on hypothetical facts, which the proof shows did not exist in this case. But the charges might well have been refused on other grounds.

9. As to the notice. The notice proved is sufficient. All the law requires is reasonable diligence. A notice sent. to the place where a party to a bill or note resided at the time it was made, or taken by the holder, is sufficient, although the party may have removed to another place before the discharge of the bill, if the holder does not know, and has no reason to suspect the change of residence. Bayley on Bills, 383; Bank of Utica v. Phillips, 3 Wend. 408; McMurtre v. Jones, 3 Wash. C. C. R. 206. Downer v. Remer, 21 Wend. 13, overrules Cuyler v. Nellis, 4 Wend. 398, quoted by the plaintiff in error.

It is shown that the drawer continued to reside near Selma (which was his nearest post office at the time the bill was drawn,) until within two months of the maturity of the bill, and kept up his plantation near Selma until after the bill became due. The holder resided in Mobile, about 170 miles from Selma. There is no evidence conducing to show, that the holder knew, or had any reason to suspect the change of residence of the drawer, or that there was any thing to put him on the inquiry. In sending the notice therefore to Selma, the holder used all the diligence the law required. The bill being dated at Mobile, under the circumstances, signifies nothing. Lowry v. Scott, 24 Wend. 359.

10. The drawer, Goodwin, was not entitled to notice, for the reason that he had no funds in the hands of the acceptor. Stewart v. Desha, Sheppard & Co., 11 Ala. 848; Scott v. Lefford, 1 Camp, 247.

CHILTON, J.—Several decisions of this court are conclusive to show, that when a person entrusts another with his blank signature, to be filled up for a particular sum, or to be used in a particular manner, and it is filled up with a greater sum, or is used in a different mode than that contemplated, the paper, nevertheless, in the hands of a *bona fide*

holder, may be recovered upon.   See authorities cited in De-
catur Bank v. Spence, 9 Ala. R. 800.   The second plea to
which a demurrer was sustained, is evidently defective, as it
does not aver any knowledge on the part of the holder of
the paper, of the circumstances set forth to invalidate the
bill, or that the character in which he holds it, or the means
by which he acquired it, justified an inquiry into its conside-
ration.   The third plea was properly held bad, as it contains
no averment connecting the blank signature of the defend-
ant below with the bill sued upon.   But it is unnecessary
to go into an investigation of the merits of the pleas, as it is
manifest from the record that the plaintiff in error has had
all the benefit which he possibly could have had under these
pleas, under the general issue which was sworn to, and hav-
ing sustained no injury, he cannot be heard to complain.
The rule is, that the party plaintiff in this court must show
injury as well as error, to entitle him to a reversal.   See Mc-
Kenzie v. Jackson, 4 Ala. Rep. 230; Shehan v. Hampton, 8
Ala. Rep. 943.

2.  Waiving the consideration of the question, whether the
circumstances connected with the making and negotiating
the bill in suit, coupled with the fact that a want of funds of
the drawer in the hands of the acceptor, do not dispense
with the necessity of notice of the dishonor of the bill to
the drawer, (1 Camp. Rep. 247,) we will briefly proceed to
state the grounds upon which we determine the notice which
was given is sufficient to charge the plaintiff in error with
the payment of the bill.

In due time after the maturity of the bill, it was regularly
protested for non-payment by a notary public, who forward-
ed, by the next mail, notice of protest, directed to Selma,
Dallas county, Alabama, to the address of the plaintiff in er-
ror.   The bill of exceptions shows that the plaintiff in error
was a planter, residing near Selma, his then nearest post of-
fice, at the time of the making of said bill of exchange, but
that some two months before the maturity of said bill, said
defendant had permanently removed to Talladega county
with his family, and was residing in said county at the ma-
turity of said bill, and has resided there ever since, but the
defendant continued to own the farm near Selma, upon which

he had formerly resided, and his slaves, after his removal, made a crop there, he visiting the plantation several times, and remaining a day or two each time. That after his removal, Selma ceased to be his nearest post office by some seventy or eighty miles. It was also shown, the plaintiff resided in Mobile when the bill was protested, but there was no proof showing the plaintiff below knew of the removal of defendant, or that his residence was known to him, unless sending the notice to Selma is evidence of such fact of residence. 'This is all the evidence upon the subject of the drawer's domicil.

It is well settled, that a domicil once fixed, remains until a new one is acquired. Jemison v. Hopgood, 19 Pick. 77; 11 Ib. 401; 11 Mass. 424. The permanent removal to Talladega county does not necessarily imply, that the party had a fixed residence in that county at any particular place, so that notice might have been transmitted to him. But he was "residing there at the maturity of the bill. How long had his residence been fixed there? It may be two months —one month—a day—we are not advised; and as the defendant below sought to avoid the effect of the notice, by showing a change of his residence, he who could have made the matter plain, should have done so. The fourth and fifth charges, which present the question of notice to the court, assume that the removal of the plaintiff in error, without regard to his fixed or permanent residence, would avoid the effect of notice sent to his former residence in Dallas. He may have changed his location daily in Talladega county, before acquiring there a fixed domicil, and a notice directed to any post office in that county, pending this period, would have been less likely to have reached him than if sent to his plantation.

The object of the law, in requiring notice to be given of the dishonor of the bill to the drawee, is to enable him to withdraw his funds from the hands of the acceptor, or, if he be a drawer for the accommodation of the acceptor, that he may promptly provide himself indemnity by suit. But while the rule has respect to the protection of the parties, it is not so stringent as to require the exercise of extraordinary diligence. It must receive a reasonable construction, adapted

to the general convenience of the mercantile world, and such as will clog as little as possible, consistent with a due regard to the safety of the parties, the circulation of paper of this description. In the Bank of Columbia v. Lawrence, 1 Pet. Rep. 578, the question of notice is discussed at some length. In that case, the defendant resided within three miles of Georgetown, which was his nearest post office, and at which the notice was left. Before the maturity of the bill, he had however resided in Washington City, where he had carried on the business of a morocco leather dresser, keeping a shop and he and his family residing in a house of his own. This house he still owned, and often rented it, (being in the occupancy of his sister-in-law,) settling up his old accounts, &c. The judge of the circuit court charged, that the notice should have been sent to Washington City, but the supreme court reversed the judgment, deciding the note sent to the post office at either place was sufficient. So, in the Bank of Utica v. Philips, 3 Wend. Rep. 410, where the defendant, after the indorsement, but before the maturity of the note declared on, removed from *Geddes*, in the county of *Onondaga*, to *Fulton*, in the county of *Oswego*, the holder, having at the time of the indorsement noted upon the paper his place of residence, caused notice of protest to be forwarded to *Geddes*, his former place of residence, having no notice of his removal. The court (*Marcy, J.*) held the notice sufficient, and say, " the question of diligence cannot arise except in cases where the party knows or ought to know that there is occasion for its exercise. Ought the holders of this note, when it fell due, to have known that intermediate its discount and maturity, the indorser had changed his residence ? They had no reason to suspect such an event, and of course, no considerations of diligence could have prompted them to have instituted any inquiry in relation to it." See also McMurtie v. Jones, 3 Wash. C. C. Rep. 206 ; Baily on Bills, 283 ; Story on Bills, 230, 231, and note 2, where the authorities are collated. We are not, however, called upon to go so far as the court in the Bank of Utica v. Philips, and desire to confine our opinion to the facts of this case, resting it upon the ground that the isolated fact of the removal of the defendant, who was a planter, of his white family to Talladega, two months before the

maturity of the bill, leaving his slaves on the plantation, and showing no change in the mode of carrying on his business, to which he gives personal attention, is not of itself sufficient to avoid the effect of notice directed to that point.

3. It appears that at the time of the purchase by Haynes of the bagging and rope from the plaintiff, and the filling up the bill in suit, Haynes executed his four notes for the amount, and that McCoy, the plaintiff, gave him a receipt, in these words: "Rec'd, Mobile, 27 May, 1844, of Thomas Haynes, Esq. T. A. Goodwin's draft on Thomas Haynes, and by him accepted, payable 1-4 April, 1845, for twenty-five hundred dollars, as collateral security for the following notes: Tho. Haynes's note in my favor, due 15-18 Dec. '44, for $642 31; note in my favor due 15-18 Jan'y, '45, for $642 31; note due 15-18 Feb'y, '45, for $642 32; another due 1-4 March, '45, for $642 32. The above acceptance of Thomas Haynes, to be given up on payment of above four notes. (Signed)

FRANKLIN W. McCOY."

It is contended by the counsel for the plaintiff in error, that this bill cannot be allowed to operate as a guaranty for the payment of Haynes's notes, as it is not apparent on its face that such was the intent of the parties, and that parol evidence is inadmissible to change the written contract. The answer to this is, that such proof is not necessary to entitle the plaintiff to a recovery upon the bill, and moreover, the only proof offered upon the subject was admitted upon the motion of the plaintiff in error, and he cannot complain of its admission. But the proof does not contradict the written instrument, it only explains the consideration upon which the bill was negotiated.

It is further insisted, that by the contemporaneous execution of the above receipt, the acceptance is qualified, and the bill is made payable upon a contingency, and cannot for this reason be recovered. Admitting that the bill, notes and receipts, all form but one contract between the acceptor and the plaintiff below, and that it is well settled law that the bill must be payable absolutely and at all events, still we think the effect of this contract is not such as to make the paper, as respects the drawer or the acceptor conditional, or contingent in the sense as understood by the law. In what does

the condition or contingency annexed to this bill differ from that implied in every other? It is to be delivered up to the acceptor upon full payment. The bill sued, on and the four notes are given for the same consideration; the payment of the one cancels and discharges the others. If this constitutes it conditional and contingent, then every bill drawn in sets after the usual form, would be liable to the same objection; for each of the set is made payable upon condition the others of the set have not been paid. So in the bill before us, construed in connection with the receipt, it is to be paid absolutely and at all events, but if the acceptor pays the debt for which the bill is given, then of course it is discharged, and to be returned to the acceptor. The liability of the drawer is in no manner affected. His undertaking is always collateral to that of the acceptor, being chargeable, *if* the acceptor fails to pay.

But if we allow the position of the counsel to hold good, that the bill is rendered contingent by this arrangement, still the charges asked by the plaintiff in error, presenting this feature in the case, were properly refused, as they denied the right of action altogether; whereas the contract, having been fully executed by the plaintiff below, and being perfectly legal and made by Haynes, as he proves with full authority from Goodwin thus to bind him, is certainly evidence under the common counts, and in connection with the other proof, fully justified a recovery, if the jury believed the credit was given to Goodwin, the plaintiff in error, although Haynes received the bagging and rope, and bound himself likewise to pay.

It does not follow, however, that a partial or conditional acceptance renders the bill, which is not payable upon a contingency but absolutely, inoperative against the drawer. The duty of the holder, if he take such conditional acceptance, is to give immediate notice to the drawer of the character of the acceptance. Chitty on Bills, 300; Payton v. Winter, 1 Taunt. Rep. 422. If it be replied, no such notice was given in the case at bar, the answer is, Haynes was the agent of Goodwin the drawer, to fill up the blank and negotiate the bill, and with full authority to make the arrange-

36

ment as it was consummated. The drawer must then be considered as having notice of the terms of the acceptance, the drawing and accepting the bill being contemporaneous acts.

We will not pursue the subject further. The conclusions attained by us, show the charge given by the court was unexceptionable, and the charges asked were properly refused, and that there was no error of which the plaintiff in error can complain, in sustaining the demurrer to the pleas.

Let the judgment be affirmed.