26   341
95   219
26   341
104   386

## NELSON ET AL. *vs.* BONDURANT ET AL.

1. In trespass to recover damages for injuries inflicted on a slave, which caused his death, it is not necessary to aver with particularity in the declaration everything that was done on the prosecution for the felony, nor to state what witnesses appeared, or what testimony was offered : an averment that the defendants were prosecuted before a justice of the peace, by whom they were required to enter into recognizances for their appearance at the next term of the Circuit Court to answer the felony, and that at that term of the court they were duly prosecuted before the grand jury, who made diligent inquiry into the charge, but found no indictment against any of the defendants, is a sufficient allegation of the prosecution.

2. A plea, averring that the defendant, at the time of the alleged trespass, had

the rightful and legal control and possession of the slave, under a contract of hiring from his owner; that the slave refused to obey him, and forcibly resisted the exercise of his lawful authority; and that he only inflicted such proper and moderate chastisement as was absolutely necessary to overcome such resistance and to subdue the slave, is a full defence to such action.

3. The wrongful sustaining of a demurrer to a special plea, when the defendant had the full benefit of all the facts alleged in it under his other pleas, is not a reversible error.

4. Trespass may be maintained by the owner against the hirer of a slave, for an illegal and forcible injury, causing the slave's death, committed while in the hirer's possession under his contract.

5. In the absence of an express stipulation, the owner delegates to the hirer the same right to punish and correct the slave which he himself has; but if the punishment inflicted by the hirer, when considered with a just regard to all the attendant circumstances, is either cruel or barbarous, he becomes a trespasser *ab initio*, and liable to damages at the suit of the owner.

6. But the mere fact that the slave was tied when the punishment was inflicted, and so secured as to prevent resistance on his part, does not affect the rights or liabilities of the parties.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. NAT. COOK.

TRESPASS VI ET ARMIS by John F. Bondurant, Sarah Bondurant, Mary E. Bondurant, James K. Armstrong and Lucy his wife, and Rebecca Bondurant, suing by her next friend John F. Bondurant, against Samuel Nelson, Joseph Gouldman, Z. B. John, Andrew Jackson, and Richard M. Booker, "to recover damages for the unlawful beating and killing by said defendants of a certain slave, named Sam, the property of the said plaintiffs." The declaration contained two counts, the first of which, after alleging the commission of the trespass complained of and the slave's death in consequence thereof, averred, that afterwards " the said defendants were duly prosecuted before one Young L. Roylston, then being a justice of the peace in and for said county, for the supposed felonious killing of the said slave; that afterwards, to-wit," &c., " the said defendants, before, and in pursuance of the order and requisition of the said justice of the peace, entered into their recognizance for their appearance at the then next term of the Circuit Court in and for said county, to be held on the fifth Monday after the fourth Monday of September, A. D. 1850, to answer the State of Alabama to the charge of committing the felony aforesaid; that afterwards, to-wit," at said term

of said Circuit Court. " the said defendants were duly prose-
cuted before the grand jury of said county, for the supposed
felony aforesaid, and that said grand jury did then and there
diligently inquire into the said charge against the said defend-
ants, and did then and there find and prefer no bill of indict-
ment against the said defendants, or either of them ; and
plaintiffs say, that said prosecution of these defendants, upon
the charge aforesaid, was then and there ended and deter-
mined, and that no bill of indictment was found, either at said
term or at any other subsequent term of said court, nor any
other prosecution commenced against these defendants, or
either of them, for said supposed felonious killing of said
slave." In the second count the allegation is, " that said de-
fendants, at a term of the Circuit Court held in and for said
county on the — day of ——, A. D. 1850, were then and there
duly prosecuted before the grand jury for said county, for the
supposed felonious killing of said slave, and that the said grand
jury did then and there diligently inquire into the charge
aforesaid, and did then and there find no bill of indictment
therefor against said defendants, or any or either of them ; and
plaintiffs aver, that the said prosecution has been ended and
determined, and that no bill of indictment has been preferred,
or further prosecution had ", &c.

The defendants demurred to each count in the declaration,
but their demurrers were overruled, and they then filed several
pleas ; the defendant Samuel Nelson pleading separately,
1st, the general issue, and three other pleas, substantially as
follows :

2. That before and at the time of the alleged trespass on
the slave, this defendant owned, and had rightful and legal
control, and actual possession and management of said slave,
by virtue of a contract of hiring from plaintiffs for the year
1850, and that said term of hiring had not expired when said
supposed trespass was committed ; that the said slave ran
away and escaped from him, and refused to obey his lawful
and reasonable demands, and went to the plaintiffs ; that said
John F. Bondurant, acting for himself and his co-plaintiffs,
then whipped the slave, and committed the said supposed
trespass complained of in the declaration, and returned said
slave to defendant ; that the slave still refused to obey de-

fendant's lawful commands, and forcibly resisted the exercise of his lawful authority, and endeavored with a knife and axe which he seized to cut and strike defendant and all within his reach who attempted to assist in subduing him to obedience to defendant's reasonable commands; that defendant then whipped said slave, in consequence of his said resistance, and in self-defence, and with a whip inflicted moderate correction upon him; that he did not inflict any cruel or unnecessary punishment, but only such moderate castigation as was absolutely necessary, and that all the whipping he inflicted was insufficient to subdue said slave.

" 3. That plaintiffs did not in any manner prosecute defendant in a criminal proceeding for committing said supposed felony in plaintiffs' declaration alleged, before any justice of the peace or grand jury in and for the State of Alabama, or otherwise, or in any manner endeavor legally to try or convict this defendant criminally for said supposed felony ", &c.

" 4. That plaintiffs did not prosecute this defendant before the grand jury of the county of Perry, or any other grand jury in this State, for the commission of the supposed felony, or offence, in plaintiffs' declaration mentioned, by any criminal prosecution or otherwise, and did not endeavor to try or convict this defendant of said supposed offence in any manner whatever."

The pleas filed by the other defendants severally are the same as those above stated, except that, in their second plea, they aver that they were accidentally present when their codefendant Samuel Nelson was endeavoring to subdue said slave, and that, at his special instance and request, they assisted him in overcoming the slave's forcible resistance, and in inflicting such moderate and proper punishment as was absolutely necessary to subdue him.

The minute entry recites, that the plaintiffs took issue upon the first plea, " and demurred to the second, third, fourth *and fifth* pleas; which demurrer, being considered by the court, was sustained as to the second and *fifth* pleas, and overruled as to the third and fourth."

It appears from the bill of exceptions, that the evidence adduced on the trial showed, in substance, the following state of facts: That the slave Sam was hired by the plaintiffs to

the defendant Samuel Nelson for the year 1850, and was in his possession under the contract at the time of the alleged trespass; that on Saturday night, in the latter part of April, the slave wanted a pass to go to his wife's house, but Nelson told the overseer not to let him go until the next morning, as the creek was so high that it was dangerous to cross it at night; that the overseer accordingly told the boy not to go until the next morning, but the latter disobeyed his orders and went that night; that when the overseer went into the field where the slaves were at work on Monday morning, Sam picked up a club, as soon as he saw him coming, put it under his arm, and left; that he went to John F. Bondurant's, who tied him and whipped him, inflicting about thirty blows with a handful of switches, and then sent him back to defendant Nelson by Mr. Jackson; that when the boy was brought back, Nelson took hold of him by the collar, intending to punish him, but the boy drew a knife out of his pocket, caught Nelson by the collar, and cut him with the knife in several places; that Nelson continued to struggle with him, and called to his wife to bring him a rope, but when she ran to his assistance the boy cut her in the face with the knife, and also attempted to stab a negro woman who ran up to her relief; that Nelson succeeded in throwing the boy, who, in falling, struck his head upon a root or stump; that the other defendants came up to the spot while the struggle between Nelson and the boy was going on, and with their assistance the boy was finally secured and tied, and was then whipped by Nelson, Jackson, and Booker; that between thirty and forty blows were inflicted on him with a whip, some of which cut the skin; that the boy resisted to the last, and was insolent and rebellious after he was finally turned loose.

This whipping was inflicted on Monday morning. The boy afterwards walked about the house and yard, but complained of being sick, and did no work; and on the Sunday morning following he suddenly died. The defendants offered evidence, tending to show that, at the time they whipped the boy, they did not know that he had been whipped by said Bondurant as above stated. A *post-mortem* examination of the body was made by several physicians, some of whom testified, in behalf of the plaintiffs, that the slave's death was caused by the

whipping which he had received; while others testified, for the defendants, that the wound on the back of his head, received in his struggle with Nelson as above stated, was, of itself, sufficient to have produced death. On this point the bill of exceptions states, that "the physicians all concurred in the opinion, that if the death in this case was the result of the injuries the boy had received, it was impossible to attribute his death to any portion of those injuries—that it was the result of all the injuries taken together, and that all contributed their proportion; that the whipping which the boy received after being tied did not, of itself, cause his death, and that he might have died from some other cause than the injuries inflicted."

"Upon this state of facts, the court charged the jury—

"1. That if they believed from the testimony that Bondurant, one of the plaintiffs, whipped the boy, and that the boy's death was caused by that whipping alone, then these defendants would not be liable; or, if they believed that the injury which the boy received in the fall, while engaged in conflict with Nelson, was the sole cause of his death, then defendants were not guilty, and could not be made liable. But if the testimony satisfied them that the defendants whipped the boy, or were present and assented to and concerned in the whipping by the other defendants, and that the boy was tied hand and foot when he received the whipping, and that the whipping which he thus received from the defendants was by itself the cause of his death, or that the whipping which the defendants gave him, in connection with the other injuries, any or all of them, was the cause of the boy's death, the defendants would all be liable for his value.

"2. That if they believed the whipping was done by the defendants after the boy was securely tied, that Nelson had a right to whip him, and that he had a right to call assistance in punishing the boy; yet, if the whipping thus given, either by itself or in connection with other injuries which the boy might have received before the whipping, caused his death, defendants would be liable for his value to plaintiffs in this action.

"3. That although they believed that Bondurant whipped the boy, and that he received a severe injury from the fall while engaged in conflict with Nelson; yet, unless they be-

lieved that one or the other or both of these injuries, of them-
selves, caused the death of the boy, and that the whipping by
the defendants had nothing whatever to do with his death,
the defendants would be liable to the plaintiffs."

The defendants excepted to each one of these charges, and
also to others which the court subsequently gave on the re-
quest of the jury for further instructions ; and they requested
several charges, which the court refused to give.

The rulings of the court on the pleadings, the charges given,
and many other things which it is unnecessary to notice, are
now assigned for error.

I. W. Garrott and Jos. R. John, for the appellants :

1. The killing of the slave being *prima facie* a felony, the
civil remedy is merged in it.—McGrew v. Cato's Executor,
Minor's R. 8; Morgan v. Rhodes, 1 Stew. 70; Holmes v. Mid-
dleton, 3 Port. 427; Minter v. Blackburn, 22 Ala. 613.

2. The declaration does not set out a sufficient prosecution
of the criminal offence to entitle the plaintiffs to maintain
their suit. It does not aver that plaintiffs gave evidence be-
fore the grand jury, or the justice of the peace, or in any way
aided in the prosecution ; nor that any witnesses were sum-
moned before the grand jury, nor that anything was done by
any person : the only averment is, that defendants "were duly
prosecuted"; and this is not enough. The owner of stolen
goods can only have restitution by bringing an appeal and
giving fresh suit : if guilty of neglect, he is not entitled to
recover.—2 Hawk. 241, §§ 55-6; *ib.* 238, § 48; *ib.* 239, §§ 50
to 52; 1 Hale's P. C. 540. Plaintiff must give evidence, or
he cannot recover.—1 Hale's P. C. 546. Restitution was
only allowed on conviction, or outlawry, or what was equiva-
lent thereto.—2 Hawk. 240, § 53. If a thief takes goods from
two, conviction must be had for both crimes : owner can only
have restitution on his own conviction, or what is equivalent
thereto.—1 Hale's P. C. 545; 2 Hawk. 240, § 52. If an in-
dictment is found, and a *nolle pros.* entered, a civil action does
not lie.—Goddard v. Smith, 1 Salk. 21; 6 Mod. 261.

3. The fifth plea, to which a demurrer was sustained, is .
merely the plea of not guilty, drawn in strict conformity to the
law. The court clearly erred in sustaining the demurrer to it.

4. The action should have been case, instead of trespass. The slave was hired for the year, and died before the expiration of the term of hiring. The injury, if any, was to the reversionary rights of the plaintiffs, and not to their possession. 1 Chitty's Pl. 175; Campbell v. Arnold, 1 Johns. Rep. 511; Hilliard v. Dortch, 3 Hawks' Rep. 246; Copeland v. Parker, 3 Ired. 513; Hogan v. Carr, 6 Ala. 472. That the hirer is owner for the year, is shown by the cases of Ricks v. Dillahunty, 8 Port. 133, and Hogan v. Carr, *supra*.

5. The first and second charges are severally defective, in that they assume that plaintiffs could maintain their action without proof of possession, which is essential to such an action.—Castillo v. Thompson, 9 Ala. 937; Phillips v. McGrew, 13 *ib.* 255.

6. The third charge assumes, that the only fact necessary to a recovery is, that the whipping inflicted by the defendants had something to do in producing the slave's death. All the other evidence is withdrawn from the minds of the jury, and they are told that, if the whipping had any agency in producing the death of the slave, it was enough. All the circumstances under which the whipping was inflicted, showing that defendants were endeavoring to subdue the slave, are left out of view. The court erred in thus limiting the jury to the specific facts stated in this charge.—Holmes v. The State, 23 Ala. 16; Dill v. Camp, 22 *ib.* 249; Edgar v. McArn, *ib.* 796; Ladiga's Heirs v. Rowland & Heifner, 21 *ib.* 9.

7. The main question in the case is this: How far can a hirer, or any other person than the owner, go in endeavoring to subdue an obstinate and rebellious slave? It is submitted, that if one has the right to control the slave, he can inflict proper, moderate punishment upon him (as chastisement, and not in anger or revenge) until he is subdued; and if the slave is not made to yield by the application of such punishment, but continues rebellious, the hirer (or other person having control) may continue to inflict proper and moderate punishment, and, if death ensues, he will not be responsible to the owner. There cannot be any middle ground between the liberty of the slave and his absolute, unconditional submission to his master: if the slave cannot be compelled to submit by proper and moderate punishment, the rule of the master is at

an end, and the slave becomes a freeman.—Dave v. The State, 22 Ala. 23. "Every effort to extend to him positive rights, is an attempt to reconcile inherent contradictions."—Kinlock v. Harvey, Harper's (S. C.) Rep. 514. "In the very nature of things he is subject to despotism."—*Ex parte* Roylston, 2 Strob. Law R. 43.

WM. M. MURPHY, *contra:*

1. No action for a malicious prosecution will lie, until a discharge or acquittal; yet, if a bill be returned "Not a true bill", this is such a discharge as will authorize the bringing of the action.—Payn v. Porter, Cro. Jac. 490; White v. Fort, 3 Hawks' R. 267.

2. If a bailee destroy the thing bailed, trespass may be supported.—1 Chitty's Pl. 169, 172, and authorities there cited.

3. The plaintiffs did all in their power to secure the prosecution and conviction of the defendants : they caused them to be tried before a justice of the peace, and to be recognized in sufficient bonds for their appearance at court; and caused the matter to be brought before the grand jury, and diligent inquiry to be made. In the very nature of things they could not testify, as the trespass was committed by a bailee on property in possession of the defendants.

4. The killing of the slave by a barbarous whipping or beating, though without intention to kill, was unlawful.—Clay's Digest, p. 413, §§ 6, 7. If any illegal act be done, the party doing it, or causing it to be done, is responsible for all consequences resulting from the act.—Burton v. McClellan, 2 Scam. 434. It is not necessary that the act should be wilful : even if it be accidental, the plaintiff is entitled to recover. Leame v. Bray, 3 East 591, and numerous authorities there cited ; Schuer v. Veeder, 7 Blackf. 342 ; Blin v. Campbell, 14 Johns. 432.

5. The right of Nelson to punish the slave for insubordination, and to use proper force to subdue him, is admitted ; but it is insisted, that he had no right to kill the slave, unless in self-defence. If the slave was tied hand and foot, perfectly in the power of Nelson, and Nelson and the other defendants were in no danger ; and if they continued to whip him, while thus bound, and the slave died in consequence of such whip-

ping, then the defendants became trespassers *ab initio*, and are responsible. The charges of the court, tested by these principles, are correct.

GOLDTHWAITE, J.—The demurrers to the several counts in the declaration were properly overruled. The averments in the first count, that the defendants below were duly prosecuted before a justice of the peace of the county for the killing of the slave, and entered into a recognizance for their appearance at the next Circuit Court to answer the supposed felony; and that at such term they were duly prosecuted therefor before the grand jury, who diligently inquired into the charge, and found no bill against the defendants, or either of them, we regard as a sufficient averment of the prosecution. It is not necessary to aver with particularity everything that was done, or to state what witnesses appeared, or what testimony was offered. If there was, in fact, no prosecution, or it was not carried on in good faith, or was not successful by reason of collusion between the parties, the defendants could obtain the benefit of these matters by proving the facts. The allegation that they were duly prosecuted before a tribunal having jurisdiction, is sufficient.

What we have said in relation to the first count, applies equally to the second, which charges in the same language the prosecution of the appellants before the grand jury.

In relation to the demurrer to the second plea, it is only necessary to observe, that we are satisfied that the facts alleged in that plea constituted a full defence to the action; yet, as the record shows that the defendants had the full benefit of this plea by the evidence offered to the jury under the other pleas, the sustaining of the demurrer is not, under such circumstances, a reversible error.—Goodwin v. McCoy, 13 Ala. 271.

The statement in the record to the effect that a demurrer was filed and sustained to the fifth plea, we presume must be a clerical mistake, as there is no such plea; and being left entirely in the dark as to what plea the demurrer applied to, we are unable to pronounce upon the judgment of the court in sustaining the demurrer, to any other than the plea we have already noticed.

As to the charge of the court, which, when taken in connection with the evidence on which it was based, may be regarded as asserting the proposition, that trespass could be maintained by the owner of a slave, for an injury causing his death, done by a person in possession under a contract of hiring, we think there was no error. It is true that the gist of the action of trespass, for injuries to real or personal property, is the damage done to the possession; but a constructive possession is all that the law requires, and it is deemed constructive, when the party who brings the action is the owner at the time the injury is committed, and has as such the right to the possession at that time; as in case of the destruction of property by a common bailee, or cutting down trees by the tenant at will, (Co. Litt. 57 a; *ib.* 200 b,) in which cases, says Mr. Greenleaf, the interest of the wrong-doer is thereby determined, and the possession immediately reverts to the owner.—2 Greenl. Ev. § 615. Where, however, the plaintiff's right to the property exists only in remainder, or reversion, the action must be case (1 Ch. Pl. 167); for the reason, that until the event happens, or the period arrives, which invests him with the actual right of enjoyment, he cannot, under his title as remainder-man or reversioner, be entitled to the possession. But if he occupy a position which gives him the right to resume the possession of his property upon the commission of the wrongful act, then, the instant this right accrues, he is regarded, upon the principle we have already adverted to, as having the constructive possession, so as to authorize him to maintain trespass for the act. The application of this doctrine to the particular case before us, is readily perceived. In every contract of hiring, the owner transfers no greater rights in relation to the slave than he himself possesses; and in every bailment of this character, a reservation is implied, requiring the bailee to treat him with humanity, and to discharge those duties which the law regulating the relation of master and slave requires from him. If he fails to do this, the contract is broken, and the owner can resume the possession.—Rasco v. Willis, 5 Ala. 38; Hogan v. Carr, 6 Ala. 471. And if the act is forcible, as well as unlawful, the owner can maintain trespass; the bailee not being entitled, as a right, to the possession for the

Nelson et al. v. Bondurant et al.

remainder of the term.—Gillian v. Senter, 9 Ala. 395 ; Hilton v. Caxton, 2 Bail. 95.

It appears from the bill of exceptions, that the court instructed the jury, in effect, that if the slave belonging to the plaintiffs, being first so secured as to be unable to resist, was whipped in that state by the defendants, and the whipping thus inflicted was one of the causes of his death, they were liable for his value. This was clearly erroneous. In all this class of cases, the question of liability must be referred to the character of the act. If lawful, there can be no liability ; while, if unlawful, the actor is always liable to the injured party, at least to the extent of the injury actually sustained. The owner of the slave has the right of punishment and correction, being responsible to the law for its abuse ; and in hiring to another person, in the absence of any express stipulation, he delegates to such person the same rights in this respect which he himself possesses ; and the master by hire is only liable when he exceeds or abuses the authority which the owner and the law concede to him. He has the right to correct, but he has no right to be barbarous or cruel ; and if the punishment inflicted, when considered with a just regard to all the circumstances which surround it—the character of the offence, and the offender ; the necessity of maintaining discipline and enforcing obedience—is either the one or the other, it is denounced by our penal code (Clay's Dig. 431, § 1), and being unlawful, he is a trespasser *ab initio*, and subject to damages at the suit of the owner. The charge seems to lay some stress upon the fact of the slave being secured, so as to be unable to resist at the time of the whipping ; but this cannot in any way affect the rights in respect to correction. If it is administered so as not to be obnoxious to the law—so the punishment is not cruel or barbarous—there is no liability even should death ensue. The charge of the court was erroneous, as it held the appellants responsible for the result of the act alone, without making their liability depend upon the illegality of the act.

As the views we have expressed will probably be decisive of the case on another trial, we consider it unnecessary to pass upon the other questions raised upon the present record.

Judgment reversed, and cause remanded.