# Wilkinson *v.* Searcy.

*Trespass for taking Personal Property.*

1. *Possession as evidence of title; sufficiency of plea.*—Possession of property, though presumptive evidence of ownership, is not title, nor the equivalent of title; and where the defendant, in trespass for taking personal property, justifies under a mortgage executed to him by a third person, a plea averring that the mortgagor was, at the time, in possession of the property, claiming it as his own, does not show title or ownership in him, and is demurrable.

2. *Vindictive damages; when recoverable.*—To authorize the recovery of vindictive, punitive, or exemplary damages, something more must be shown than a "mere disregard of the rights of others," which is involved in every trespass, except those committed in honest mistake, or by accident, or, possibly, by misadventure.

3. *Same; averment of.*—Exemplary damages are not special damages, and may be recovered although not specially alleged and claimed in the complaint.

4. *Sufficiency of evidence; charge as to.*—In civil actions, the evidence is sufficient to authorize a recovery, if it "satisfactorily convinces" the jury; "clearly and satisfactorily convinced from the evidence," when the words are used in a charge requested, requires too much.

5. *Charge invading province of jury.*—A charge to the jury in these words, "If you find, from the evidence, that the defendant testified he took the corn under the honest belief that it was B.'s under the mortgage, and you find, from the evidence, that the acts and conduct of the defendant in the transaction speak louder than the words thus testified by him, and show that the taking was not under such honest belief," &c., invades the province of the jury.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. JNO. P. HUBBARD.

This action was brought by J. A. Searcy, against W. W.

[Wilkinson v. Searcy.]

Wilkinson. The complaint contained a single count, which claimed $150 as "damages for wrongfully taking the following goods and chattels, the property of the plaintiff, viz., fifteen bushels of corn in the ear." The defendant pleaded not guilty, and a special plea which averred that the corn was conveyed by a mortgage executed to him by one Simon Golson, and was taken by him, with the consent of said Golson, under and by virtue of said mortgage, after the law-day and default. The court sustained a demurrer to this plea, and it was then amended, by leave of the court, by adding an averment that, at the time the mortgage was executed, "said Golson was in possession of said property, claiming it as his own." A demurrer was sustained to the plea as thus amended, and it was then again amended, by leave of the court, by alleging that said Golson, at the time the mortgage was executed, "was the owner of said property;" and issue was then joined on both of the pleas.

On the trial, as appears from the bill of exceptions, it was shown that the defendant, on or about the 27th February, 1883, sent a man with a wagon out to the plaintiff's plantation, and took about twelve or thirteen bushels of corn out of a crib near the house occupied by one Simon Golson, who was a tenant of the plaintiff, no one being present at the time except a daughter of said Golson, who, as defendant's agent testified, told him that the corn belonged to her father. The plaintiff testified, in his own behalf, that the corn was his, and was sent down by him to Golson to feed a mule which Golson was using, because Golson had no corn; and he further testified that he had informed defendant, on several occasions, before the taking of the corn, in answer to inquiries, that Golson had no corn on the place. The defendant claimed to have taken the corn under a mortgage executed to him by said Golson, which was dated January 9th, 1883, and purported to be given to secure advances made to raise a crop during the year 1883; but it recited that the mortgagor then had on hand, of the crop of 1882, over one hundred bushels of corn; and the defendant, testifying as a witness for himself, stated that said Golson told him, at the time, that he owed plaintiff nothing, and was willing that defendant should then take some of the corn in part payment of the debt, "and that he took the mortgage to vest title to the corn in himself." The defendant testified, also, "that he took the corn under and by virtue of said mortgage, believing that it was the property of said Simon Golson;" and that when the plaintiff afterwards claimed the corn, and spoke to him about it, "he said he would investigate the matter, and pay for it if it was plaintiff's." As to this interview, plaintiff testified, that he "told defendant he must send the corn back,

12

or pay for it;" and that defendant replied, "if he (plaintiff) got the corn, he would have to do so at the end of the law." Golson, who was examined as a witness for the plaintiff, sustained the plaintiff's own testimony, and contradicted that of the defendant.

"The court charged the jury, among other things, that a man is charged with the duty of exercising ordinary care, in taking property to which he is entitled, so as to get the right property; and if a man, in thus taking property, had no title to, or right to take it, and takes another person's property by not using ordinary care, so as to get his own, or that which he is entitled to, he is liable for the damages that result from taking such other property, to the owner thereof; one can not carelessly take another's property, and thereby not be liable.    To this portion of the general charge the defendant duly excepted."

The plaintiff asked the following charges, in writing:    1. "Exemplary damages mean damages given by way of punishment for the commission of a wrong willfully or recklessly [done]; and if the jury find, from the evidence, that the property was wrongfully taken, and that it was done under such circumstances, or in such manner, as to show a disposition on the part of the defendant to wantonly possess himself of such property, regardless of the plaintiff's rights thereto, then the jury may, in addition to the value of the property taken, assess such exemplary damages, by way of punishment to the defendant, as to them shall seem just and proper, in view of all the evidence in the case, not to exceed $150."    (2.) "If the jury find, from the evidence, that the property was wrongfully taken by the defendant, and that the act of taking was done under such circumstances as to show a disregard of the rights of the plaintiff, or an intention to set at defiance his legal rights, or the ordinary obligations of society, then they are authorized, in addition to the value of the property taken, and interest thereon, to assess such further damages as they may deem just and proper, in order to punish the defendant for his willful wrong, and to prevent others from committing like offenses, but not to exceed $150 in all."    To each of these charges the defendant duly excepted.

The following charges were asked in writing by the defendant, and refused by the court, exceptions being duly reserved by him to the refusal of each :    (1.) "Under the averments of the complaint, vindictive damages can not be given to the plaintiff."    (2.) "Unless the jury are clearly and satisfactorily convinced, from the evidence in the case, that the defendant committed a trespass upon the plaintiff's property maliciously, or in a wanton and aggravated manner, and with the desire to vex and harass the plaintiff, exemplary damages should not be

[Wilkinson v. Searcy.]

allowed." (6.) "To authorize the jury to give exemplary or vindictive damages, either malice, violence, oppression, or wanton recklessness to plaintiff must mingle in the controversy. The act complained of must partake of a criminal, wanton nature, else the amount to be recovered will be confined to compensation." (12.) "Vindictive damages should not be given, unless the wrong or injury proved is of a grievous nature, done with a high hand, or is accompanied with a deliberate intention to injure, or with words of contumely and abuse, and by circumstances of aggravation."

The rulings of the court on the demurrer to the special plea, the charges given, and the refusal of the charges asked, are now assigned as error.

GAMBLE & RICHARDSON, for appellant.—(1.) The court erred in sustaining the demurrer to the special pleas which averred possession by the mortgagor, default, and taking possession under a power in the mortgage. Possession is *prima facie* evidence of title.—*Hobbs v. Bibb*, 2 Stew. 54; *Governor v. Campbell*, 17 Ala. 566; 1 Brick. Dig. 806, §§ 37–39. As to the mortgagee's right to take possession after default, see *Street v. Sinclair*, 71 Ala. 110; *Burns v. Campbell*, 71 Ala. 271; Jones on Mortgages, § 434. The plea averred facts, on which an issue might be taken; while an averment of title, as assigned in the demurrer, would have been the averment of a legal conclusion.—2 Brick. Dig. 330, § 3; *Ib.* 347, §§ 277–80. The amended plea, after demurrer sustained, averred ownership in the mortgagor, and imposed on defendant the burden of proving it; while the complaint averred ownership in the plaintiff, and imposed on him the burden of proof. (2.) No phase of the evidence authorized a recovery of vindictive damages, and the court erred in its rulings on the question, both in the charges given, and in the refusal of the charges asked.—*Leinkauff v. Morris*, 66 Ala. 406; *Burns v. Campbell*, 71 Ala. 291; *Hair v. Little*, 28 Ala. 236; *Roberts v. Heim*, 27 Ala. 678; *Parker v. Mise*, 27 Ala. 480; *Durr v. Jackson*, 59 Ala. 210; *Railroad Co. v. McLendon*, 63 Ala. 266. Charge No. 6, as requested, is copied literally from Sedgwick on Damages, 538; and the 12th charge is copied from Addison on Torts, vol. 2, p. 646.

BUELL & LANE, *contra*.—(1.) The special plea tendered an immaterial issue, and the demurrer to it was properly sustained; and even if the ruling was erroneous, it could have worked no injury, since the defendant had the full benefit of the facts on which he relied, under the general issue.—1 Brick. Dig. 788, § 71. (2.) If there be error in any part of the general charge,

[Wilkinson v. Searcy.]

it is not in that portion to which an exception was reserved.
(3.) To authorize a recovery of exemplary damages, it was not
necessary that they should be specially averred in the com-
plaint.—Sedg. Dam. 682, note, 5th ed. (4.) Exemplary
damages were not claimed on the ground that there was any
evidence of malice, or injury to the person, feelings or reputa-
tion of the plaintiff, but on the ground that the trespass was a
willful and wanton disregard of the rights of others, and showed
an intention on the part of the defendant to take the law into
his own hands ; and for such trespasses the law authorizes the
imposition of punitive damages, not as compensation to the
plaintiff, but as a punishment to the defendant.—*Devaughn v.
Heath*, 37 Ala. 395 ; *Welch v. Durand*, 36 Conn. 182 ; Sedg.
Dam. 529; 531 ; 2 Add. Torts, § 1392, notes. (5.) The second
charge asked required too high a measure of proof, and was
calculated to mislead.—1 Brick. Dig. 871–2, §§ 964–67. The
6th and 12th charges, though quoted from the cases cited in
Sedgwick and Addison, and properly used there, unduly restrict
the standard of liability in a case like this.

STONE, C. J.—It is very true that possession is *prima
facie* evidence of the ownership of property. Such is the pre-
sumption, when one is found in possession of property. So, if
one be sued for property, and the plaintiff proves prior posses-
sion, antedating that of defendant, accompanied with customary
acts of ownership, this authorizes a recovery by the plaintiff, in
the absence of countervailing proof.—1 Brick. Dig. 572, §§
10, 11 ; *Hare v. Fuller*, 7 Ala. 717 ; *Nelson v. Bondurant*, 26
Ala. 341 ; *Tarry v. Brown*, 34 Ala. 159. So, title, with a
right to the immediate possession, will maintain the action
against a wrongdoer.—*Nelson v. Bondurant, supra.*

While, however, possession will maintain or defeat an action
against a wrongdoer, and is, to that extent, evidence of title, it
is not title, nor the equivalent of title. It is but evidence of
title, which may be rebutted and overturned. Title is a fact.
Possession is only testimony tending to prove it. Pleading is
made up of matters averred as facts, and not of testimony which
merely tends to prove them ; unless, perhaps, in cases where
the evidence averred as itself the fact, or its equivalent. The
averment of a written contract executed, may be of this class.
The second plea as originally filed, and as first amended, was in
each case insufficient, and the demurrer to it was rightly sus-
tained.

Only one clause in the general charge was excepted to, and
we find no error in that.

In *Barbour County v. Horn*, 48 Ala. 566, 576, the following
language is found, declaratory of the rule for exemplary dama-

ges in actions of trespass : "Where there is no malice connected with the wrong complained of, or such gross negligence or oppression or fraud as amounts to malice, the compensation, or amount of damages, should be confined to the actual injury and its immediate effects." In *S. & N. Railroad Co. v. McLendon*, 63 Ala. 266, we quoted this language without dissent. In that case, after quoting the rule as declared in many adjudged cases, we in effect said, there could be no punitive or exemplary damages, in the absence of fraud, malice, oppression, willfulness, wantonness, recklessness, or gross carelessness, as distinguished from mere carelessness. In reference to carelessness, or negligence, in the connection here considered, we said it depends on the degree, whether simple or gross. In the later case of *Lienkauff v. Morris*, 66 Ala. 406, we again considered this question, and reviewed many authorities. The sum of what we said and approved in that case is, that to authorize punitive, exemplary, or vindictive damages (different names for the same thing), there must be "gross negligence within the strictest signification of the phrase, which must be construed to mean such entire want of care as to raise a presumption that the person in fault is conscious of the probable consequences of his carelessness, and is indifferent, or worse, to the danger of injury to the persons or property of others;" or that the act complained of "was done willfully [in its strong sense], or was the result of that reckless indifference to the rights of others, which is equivalent to an intentional violation of them;" or "where the injury has been wanton, or malicious, or gross;" or "where fraud, malice, or oppression appears;" or, we may add, where the taking is accompanied with violence, or insulting or contemptuous language or demeanor. A reason for this rule which requires more than a mere disregard of the rights of others, to authorize the assessment of vindictive damages against a trespasser, is found in the fact, that that element exists in every trespass, except those committed in honest mistake, or by accident, or, possibly, by misadventure. So, if every trespass committed in disregard of the rights of another, entitles the injured party to vindictive damages, there are few conceivable trespassers on whom such punishment may not be inflicted.

The second charge given at the instance of plaintiff, is in the following language: "If you find from the evidence that the property was wrongfully taken by the defendant, and that the act of taking was done under such circumstances as show a disregard of the rights of plaintiff, . . . then you are authorized, in addition to the value of the property and interest thereon, to assess such further damages as you may deem just and proper, in order to punish the defendant for his willful

wrong, and to prevent others from committing like offenses." In giving this charge, the court was not without authority. See 2 Add. on Torts, Wood's ed., § 1392, note 1. We hold, however, that it does not assert the true rule, and that the Circuit Court erred in giving this charge. There is similar language, somewhat qualified, in the first charge given at plaintiff's request. Such language should be avoided on another trial.

The charges asked by defendant were properly refused. Exemplary damages are not special damages, which need be claimed in the complaint, as a condition of their recovery. This disposes of charge 1. The measure of proof postulated in the second charge asked, is too high. "Satisfactorily convinced," meets the requirement in a civil suit. There are other objections to this charge, not necessary to be here repeated. Charges 6 and 12 are both faulty, and not in accordance with the rule laid down above.

As this case must go back for another trial, we feel it our duty to notice an objectionable clause found in the general charge, which does not appear to have been excepted to. We do this in the fear the case may return upon us, presenting this question. One question in the court below raised the inquiry, whether Wilkinson, when he took and carried the corn away, had been notified that Searcy claimed it as his own. On this, Searcy and Wilkinson were directly at issue. The court charged on this question as follows : "If you find from the evidence that defendant in his evidence testified he took the corn under the honest belief it was Simon's under the mortgage, and you find from the evidence the acts and conduct of the defendant in the transaction speak louder than the words thus testified by him, and show that the taking was not under such honest belief," &c. This was not the statement of a mere legal principle, to aid the jury in weighing the testimony. If it had been, we would find in it nothing to criticise. It is frequently the court's duty to furnish such rules for the guidance of the jury. Beyond such rules, however, the duty of weighing the testimony, and of determining its credibility and what it proves, falls exclusively within the province of the jury.

Reversed and remanded.