Tucker & Wife v. Magee.

---

## TUCKER & WIFE *vs.* MAGEE.

1. S. A., by articles of indenture, bound a slave to J. for the term of five years, to be taught the trade of a brick-layer and plasterer, and at the same time executed to E. A. an unconditional deed for the slave, which he delivered to J., with instructions to deliver it and the slave to E. A. at the expiration of the apprenticeship—*Held*, That the deed took effect *in presenti*, and invested E. A. with the absolute title and property in the slave, subject only to the special property conferred on J. by the articles of indenture.

2. The contract of apprenticeship, whether a slave or white person be bound, is one of personal trust, and is not assignable.

3. If one, to whom a slave is bound as an apprentice for a term of years, before the expiration of such term, renounces his trust, and suffers the slave to be converted by a third person, the owner will become entitled to the immediate possession, and may bring trover for the conversion.

ERROR to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

THIS was an action of trover for the conversion of a slave, and was brought by Elizabeth C. Acre against the defendant in error. After the institution of the suit, Elizabeth C. Acre intermarried with Joseph Tucker, who was thereupon made a party plaintiff with her. The facts of the case are these: Samuel Acre, in the summer of 1836, put the slave into the possession of Thomas S. James, who was a brick-layer and plasterer, and then agreed with the latter that he should take the slave, feed and clothe him for five years, and teach him the trade of a brick-layer and plasterer, and deliver him, at the end of that time, to the plaintiff, Elizabeth C., who was the said Samuel's niece, and then a minor. Samuel Acre, at the same time, made a deed of indenture to James on the terms already mentioned, and also made a deed of gift of the slave *in presenti* to Elizabeth, the plaintiff, and delivered it to James, instructing him to keep it for her; also to keep the slave and teach him the trade, and at the end of the term to deliver the slave and the deed of gift to her. After this Samuel Acre died, and his widow, having become his administratrix, about two years after the execution of the indenture and deed of gift, took the slave out of possession of James, without his consent. After this Magee, the defendant, became administrator *de bonis non* of the estate of Samuel Acre, against which estate James claimed a debt of about four hundred dollars. An agreement was made between James and Magee, that the former would deliver to the latter the indenture and deed of gift, in consideration of which, Magee was to pay James' debt out of the estate, and employ him to do some work on property of the estate. James thereupon delivered to Magee the indenture and deed of gift, and Magee, as administrator of Samuel Acre, afterwards sold the slave. Elizabeth was

Tucker & Wife v. Magee.

still a minor at the time of the trial below, and knew nothing of the deed of gift, until after the sale of the slave by Magee.

The court below charged the jury that this action could not be maintained, on the ground that the conversion occurred before the expiration of five years from the execution of the indenture. This charge is now assigned as error.

STEWART, for the plaintiffs in error:

1. Acre made a deed of gift. That was sufficient to pass the title to the donee, beyond the control of himself or of his administrator. If even Acre had retained the possession of the slave himself, or reserved a life estate, he could not reclaim the slave afterwards. No delivery of the property was necessary.— McCutchen, Adm'r v. McCutchen, 9 Port. 560.

2. The delivery of the deed to James was a sufficient delivery to her to vest the title in her. It was a delivery to a trustee for her. She was an infant, and could take care neither of the deed nor of the negro. Her assent to the gift is presumed, because it is for her benefit and she was an infant, the law presumes acceptance, which is now ratified by her bringing suit. The deed was delivered to James, and he was instructed "*to keep said deed for her.*" That was the trust; it was necessary, because she was an infant. The delivery of the deed to her was to be absolute, after a certain time had elapsed. But the right was vested *in presenti*; the delivery was complete so far as Acre's parting with the possession was concerned. A delivery to a third person is as valid as if to the donee herself.—McCutchen v. McCutchen, 9 Port. 650; Pope v. Randolph, 13 Ala. 221; Smith v. Wiggins, 3 Stew. 221. And this though the grantor should die before the deed comes to the hands of the grantee and it is only delivered afterwards.—9 Port. 650.

3. The deed of gift is a complete title of itself, and draws to it the right of possession, and would control and supersede any verbal disposition of the property. But there was an indenture of apprenticeship in writing also, which gave a particular estate or qualified right—they can well stand together—but the moment the deed of apprenticeship is violated, or cancelled and surrendered, then the deed of gift stands alone, in full force and operation of itself and by its own force and effect, and the title and

right of possession of Elizabeth becomes complete and immedi-
ate. The feature of the delivery of the deed must have its full
force.

4. The next question is, can the action of trover be maintain-
ed? It is true that if James had not surrendered his right of
possession and put an end to his own title by his own act, and
violated his trust, he alone during the period of five years could
have maintained trover for the conversion, because he alone had
the right of possession during that time. But he ocould not main-
tain trover, because his right was extinguished, surrendered, de-
termined and released. Besides, his trust was violated by his own
act in favor of the very party guilty of the conversion. Magee
when he sold the slave was clearly guilty of a conversion and
wrong done to some one; who was it? If not James, it could be
no one else than Elizabeth Acre. The truth is, James's right was at
an end, and Elizabeth's title was disencumbered of that particu-
lar estate and she became entitled to the possession forthwith,
and therefore trover was maintainable.

CAMPBEEL, for the defendant:

The action of trover depends upon a *right of possession* in the
plaintiff.—2 Saund. Pl. & Ev. 880 ; Chitty's Pl. 48. No action
could be brought by Elizabeth Acre unless an action on the case
might lie against James.—Chitty's Pl. 139. James was liable
on his contract for any violation of it, but his surrender of the
slave to Magee would not destroy the title for the term.

The covenants are independent. The vice of the plaintiff's
argument consists in disregarding the contract with James.
James has a right which is wholly neglected in their estimate of
the law of the case.

PARSONS, J.—The defendant's counsel does not contend
that the writing, which in the bill of exceptions is called a deed
of gift, was an escrow, and we are entirely satisfied it was not.
Hence, in this opinion, we will treat it, not as a writing deliver-
ed to a third person as an escrow, but as a deed. But the
counsel contends, nevertheless, that Elizabeth C. Acre, now
Mrs. Tucker, had not a present right of possession of the slave,
and consequently could not maintain an action of trover. The
question therefore, is, whether or not she had a present right,.

and this leads us into the circumstances of the case. And it is to be observed in the first place, that Samuel Acre reserved nothing whatsoever to himself. The entire title and property passed from him by the indenture and deed of gift, both of which were executed at one and the same time. We will consider the deed of gift first, for the present leaving the indenture out of view. The deed was delivered by the donor to Mr. James, to be by him delivered to Elizabeth C. Acre, the donor's niece, (who was then and at the time of the trial below a minor,) at the expiration of the term of five years specified in the indenture. This deed, we think, took effect from the delivery to James, and that a further delivery by James to Elizabeth was not necessary for the purpose of vesting the property in her. There is a very well considered case, in which the court in speaking of a deed, and not of an escrow, observed, "if a grantor deliver any writing as his *deed* to a third person, to be delivered over by him to the grantee, on some future event, it is the grantor's deed presently, and the third person is trustee of it for the grantee. And if the grantee obtain the writing from the trustee before the event happen, it is the deed of the grantor, and he cannot avoid it by the plea of *non est factum*, either generally or specially pleaded."—Wheelwright et al. v. Wheelwright, 2 Mass. R. 452. —see also, McCutchen v. McCutchen, 9 Port. 650 ; 4 Kent's Com. 454. Then it is clear that the deed, considered by itself, took effect and vested the property and right of possession in Elizabeth from the time of the delivery of the deed to James. The donor thereby conveyed the title and property to Elizabeth, presently and absolutely, without any condition or reservation. But at the same time he bound the slave, by the indenture, to James for the term of five years, to be by the latter fed and clothed and taught a trade, and then delivered to Elizabeth. Thus James had, for these purposes, a right of possession of the slave for the term of five years. The special property was in him for this term and for these purposes. To every other intent and purpose, and against every other person, the title and property were in Elizabeth. In this state of things, James, during the term and for a consideration to himself, surrendered his claim to the slave, together with the deed of gift and the indenture, to the defendant, to be sold as part of the estate of the donor, and the defendant sold him accordingly, well knowing all the facts. It

was after this that the present suit was brought. The contract of apprenticeship is one of personal trust, as well where a slave is bound as a white person. The skill, habits, character and place of business of the person, to whom a child, or even a slave, is bound, to be instructed in a mechanic art, are, or ought to be first carefully considered by a parent or master wishing to bind his child or his slave. "A personal trust which one man reposes in another cannot be assigned over, however able such assignee may be to execute it."—Bacon's Ab. Tit. Grants. An apprentice is not assignable.—S Mass. R. 299 ; 19 Pick. 556. Every indenture of this kind is, we think, on the implied condition that the slave or child, as the case may be, is to be employed according to the nature and objects of the contract. This principle may, indeed, extend to bailments of a different and less delicate character.—In Whitlock v. Heard, 13 Ala. 176, the language of the Chief Justice was : "It is very clear that if a factor, or other bailee, having a lien on goods, sell them or convert them to his own use, &c., the owner may bring trover for them immediately, without regard to the lien." And this court held, in Rasco & Brently v. Willis, 5 Ala. 38, that in the hiring of slaves, there is an implied stipulation that the slave is to be employed in some honest pursuit; and if the hirer should incite or compel the slave to steal, or become the receiver of stolen goods, the owner would have the right to rescind the contract and resume the possession of the slave. In every apprenticeship or hiring of slaves, when the spirit of the contract is grossly violated, in respect of the use or disposition that is made of the slave, this principle must apply with peculiar force. And if it could not be supported upon the principles of the common law, with regard to bailments of ordinary property, we should be disposed to maintain it, as necessarily resulting from the peculiar nature of slave property ; for there must be some distinctions between slaves and other property. However, it is, perhaps, unnecessary now to allude to such distinctions. It was held in Vermont that, where the owner of cattle leased them for a term of years, under an agreement that, at the expiration of the term, the lessee might either return the cattle or pay a stipulated price for them, and the lessee sold the cattle before the term had expired, such sale determined the lessee's right of possession, and that the owner might maintain trover for the

cattle against both seller and purchaser.—Grant v. King et al. 14 Vt. R. 367. In the present case, James renounced and abandoned his trust and with it his special property in the slave, and consequently we think, Elizabeth became entitled to the immediate possession and might bring trover for the conversion. The opinion of the court below was contrary to the principles of this opinion. Wherefore the judgment is reversed and the cause remanded.