Moseley v. Wilkinson.

---

## MOSELEY *vs.* WILKINSON.

24 411
134 273

1. Where plaintiff declares in case on defendant's omission of duty, in neglecting to treat a hired slave with proper care and attention during the term, the consideration and terms of the contract of hiring need not be alleged; and if alleged, they need not be proved as averred.

2. If a slave is hired for a particular service, and is afterwards employed in a

different one, this is a conversion for which the owner may bring trover, and recover the value of the slave with interest from the time of conversion; but if, with full knowledge of the conversion before the expiration of the term, he receives the stipulated hire for the entire term, he is estopped from afterwards bringing trover.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. ROBERT DOUGHERTY.

ACTION ON THE CASE by Robert A Moseley against Beverly N. Wilkinson; the declaration containing two counts in case and one in trover. The first count alleges, that plaintiff hired and delivered to the defendant two slaves, "for a certain reasonable reward to be paid to said plaintiff in that behalf," from the first day of February, 1844, until the first day of January, 1845; that it thereby became and was defendant's duty, to treat said slaves with due and proper care and attention, and, in case of sickness, with proper medical treatment and attendance; that one of said slaves, during said term of hiring, became sick, and required medical treatment, which defendant, disregarding his said duty in that behalf, wholly failed and neglected to furnish; by means whereof, said slave died, &c. The second count alleges the contract of hiring of the slaves on the same consideration, and for the same space of time, " to be used by said defendant in the city of Montgomery, while so hired by him, and the said Adeline to be used by him as a cook"; " yet said defendant, in breach of his duty in that behalf, used said slave Adeline otherwise than as a cook and in said city of Montgomery, by working in the field and a plantation beyond the limits of said city of Montgomery, on" &c.; " by means whereof, she died, and became and was wholly lost to plaintiff." The third count is in trover.

The defendant pleaded, that the said slave went into his possession under a contract of hiring until the first day of January, 1845, and that before that time she died; that the plaintiff afterwards, with full knowledge of her death, and of defendant's use, treatment and disposition of her, received and collected the note for the hire during the entire term, thus ratifying defendant's use and treatment of her during the term. He also pleaded not guilty to each count, and *non assumpsit* to the first and second counts.

On the trial, plaintiff introduced a witness, by the name of Moseley, who testified, that he was present when the contract of hiring between the parties was made ; that the hiring was to continue until the first day of January, 1845 (but he afterwards stated, on cross examination, that it was to terminate at Christmas preceding) ; that defendant gave his notes for the hire, two for $45 each, and one for $50, due January 1, 1846 ; that said girl Adeline was hired to the defendant to cook for him, and that defendant lived in the city of Montgomery ; that after the price of hiring was agreed on, but before the delivery of the negroes to the defendant, or the execution of the notes, plaintiff told defendant, that he hired his negroes in the city of Montgomery because it was healthier than the country ; that in April, 1845, defendant re-hired said Adeline to one Hughes, who lived in the county about three miles from the city of Montgomery, where she was worked in the field, and died in the latter part of July of that year." There was evidence that the girl was neglected in her sickness ; no physician was called in, but she was treated medically by Hughes's overseer, under whose treatment she died, and there was evidence that this treatment was improper ; but on these points, as to neglect and treatment, the evidence was conflicting. It was also in evidence, that the place where Hughes lived was, in general, more unhealthy than the city of Montgomery, but that it was healthier than said city in the year 1845 ; that after plaintiff had full information that the girl Adeline was hired to Hughes, and of her death, and the circumstances of her sickness and treatment, he disposed of the notes given for the hire in October, 1845, before the commencement of this suit, to one Noble, for a valuable consideration, without any deduction therefrom, and that defendant paid them to said Noble, when due, without any deduction therefrom ; all of which occurred before this suit was commenced.

The court charged the jury, that, if the terms of the contract of hiring were truly stated by the witness Moseley, and if, by its terms, the hiring was to continue until Christmas, and not to the end of the year, then plaintiff could not recover upon the first and second counts of his declaration ; to which charge the plaintiff excepted.

The court also charged, that, if the terms of said contract

were truly stated by said witness Moseley ; and if, afterwards, said defendant hired said Adeline to said Hughes, before the expiration of the term of hiring, and she was worked in the field, and died ; and if plaintiff, afterwards, and before this suit was commenced, with full knowledge of all the facts and circumstances concerning her hiring to Hughes, her sickness, treatment and death, disposed of said notes given for the hire, for a valuable consideration, without any deduction therefrom ; and if defendant, afterwards, and before this suit was commenced, paid off said notes to Noble, without any deduction therefrom, then plaintiff cannot recover under the third count in his declaration ; to which charge the plaintiff excepted.

N. Harris and John A. Elmore, for appellant :

1. The action being case, and the contract being inducement merely, a variance in the allegation and proof, as to the time when the term of hiring terminated, was immaterial. The gravamen of the action was, the defendant's neglect of duty in not providing proper medical attendance for the girl during the term.—1 Chitty's Pleadings 290, marg. note 291.

2. The plaintiff was entitled not only to the hire during the term, but also to a return of the negro at its expiration. If he was entitled to both, the fact that he received the hire for the entire term cannot deprive him of the right to recover for the conversion during the term, any more than it would deprive him of the right to a return of the slave.—Perry v. Hewlett, 5 Port. 319 ; Ricks v. Dillahunty, 8 ib. 153.

S. F. Rice, T. Williams and Thos. H. Watts, contra :

1. Although driving a hired horse a greater distance than is agreed, or in a different direction, is a conversion, yet receiving payment for the whole distance or route actually travelled, with a full knowledge of the facts, will bar an action of trover for this cause.—Rotch v. Hawes, 12 Pick. R. 136. And a ratification of a tortious taking, will defeat an action of trover.— Hewes v. Parkman, 20 Pick. R. 90.

2. It is a rule, that if a necessary inducement of the plaintiff's right, &c., even in actions for torts, relate to, and describe, and be founded on a matter of contract, it is necessary to be strictly correct in stating such contract, it being matter of

description; and a variance is as fatal, as if the action had been brought on the contract.—Williamson v. Allison, 2 East 452; 1 Chitty's Pl. 385; Myers v. Gilbert, 18 Ala. 467; Felix v. The State, *ib.* 720; 1 Green. Ev. § 65; 1 Stark. Ev. 374; 1 Chitty's Pleadings, 228, 229, and notes.   The variances are numerous and fatal: I.   In the first and second counts, the allegation is that the contract of hiring was made on 1st February, 1844, and that the term of hiring was from that day until the first January, 1845.   The evidence of Moseley is, that the contract was made in January, 1845, and the term of hiring until Christmas of 1845.   II.   The allegation is, that the contract was "for a certain reasonable reward," not fixing any sum.   The evidence is, that one of the negroes was hired for $50, and the other for $90, and notes given accordingly for such hire.   III.   The allegation in second count is, that by the terms of the contract, Adeline was to be used by defendant in the city of Montgomery, the said Adeline to be used by him as a cook. The evidence of Moseley shows that such were not the terms of the contract.   These and other variances between the contract of hiring as alleged and described in the first and second counts, and the terms of the contract as proved by the witness, authorized the first charge, which relates only to those two counts.

3.  The contract, by its terms, does not deprive Wilkinson of the right to re-hire the slave to another.   There is no term in the contract, either as alleged or proved, that he should not re-hire the slave.   And the whole argument of plaintiff in error assumes erroneously that there is such a term in the contract.

GOLDTHWAITE, J.—One of the distinctions between *case* and *assumpsit* is, that if the former action be brought on a breach or omission of duty growing out of a contract, the contract itself need not be formally stated in the declaration (1 Ch. Pl. 124, 335), unless it constitutes a material part of the plaintiff's case.—Bevan v. Jones, 6 D. & B. 483.   Here the cause of action, as stated in the first count, is not on the contract of hiring, but for an omission of duty, in not treating the slave with proper care while she was hired.   The terms of the contract were entirely unnecessary; and whether the slave was hired until Christmas, or until the first of January, could not affect the plaintiff's right to recover, if, during the time she was

hired, the defendant let her die for want of attention.—Stoddart v. Palmer, 3 B. & C. 2. The same rule holds as to the statement of the consideration of the contract. It matters not, in this case, what was the consideration. The right to recover does not depend upon it, and whether it was an amount certain, or as much as the hire was reasonably worth, is altogether immaterial. The recovery on this count depends upon the omission of duty, and not upon the amount of hire to be paid.

So, if the slave was hired to work as a cook, and was employed to work in the field, and died because she was thus employed, it is not necessary, in framing the declaration in case, as we have seen, to state the consideration formally. The gist of the action is the breach of the duty, and no more need be stated than is necessary to show the duty and the breach.

Upon the first count, therefore, if the evidence proved that the slave was hired by the plaintiff to the defendant, and while thus hired she died from the want of proper care, or from improper treatment, on the part of the latter, the plaintiff would be entitled to recover, without reference to the term of hire as stated in the declaration, or the allegation as to the amount to be paid; and upon the second count, if the duty and the breach were shown, it is enough.

As to the charge of the court in relation to a recovery on the count in trover : If a slave is hired for a particular service, and is employed in one different from that contemplated by the contract, this is a conversion, and the owner may rescind the contract, or treat it as never existing, and bring trover (Hooks v. Smith, 18 Ala. 338) ; and in that action, he may recover the value of the slave, with interest from the time of the conversion. But, if he elects to pursue that course, he would not be entitled to hire, as such, after the date of the conversion. We have no decision going to that length ; and as we have held, that the property may be changed by a recovery in trover, to give the party who has recovered in trover the hire accruing after the conversion, would be the same as to give him hire which accrued after he had sold the property to the defendant. The same rule must hold as to the converse of the proposition. The owner is not entitled to the hire for the full term, and damages which cover a portion of the same term ; he cannot treat the contract as a sale and a bailment both ; and if, with a full

knowledge of the conversion before the time of hire has terminated, he receives pay for the entire term, he, by this act, asserts his right to the hire which accrued after the conversion, and is estopped from maintaining any action which, from the rules which govern it, is inconsistent with the right thus asserted.

As to his right to recover in case for breach of duty, in which it might be competent for the jury, in ascertaining the injury, to look to the fact that he had received the hire for the entire term in mitigation of damages, as we do not consider the question presented upon the present record, we express no opinion.

Judgment reversed, and cause remanded.