## ALABAMA & TENNESSEE RIVERS RAILROAD CO. *vs.* BURKE.

[ACTION UNDER CODE TO RECOVER DAMAGES FOR LOSS OF SLAVE.]

1. *Liability of hirer of slave for negligence.*—The hirer of a slave is responsible only for the omission of that care and diligence which the generality of mankind use and exercise in relation to their own slaves under similar circumstances; and if he re-hires the slave to another, his own contract of hiring being general in its terms, he is equally responsible for the same degree of negligence on the part of his bailee.

2. *Failure to call in physician not necessarily negligence.*—The law does not make it the duty of the hirer, under a contract general in its terms, to call in a physician on every occasion when the slave is sick and he does not know what is the matter with him; nor does it pronounce him guilty of neglect, merely because he does not, under such circumstances, call in a physician.

3. *Act tending to show negligence may be proved to have been done under advice of physician.*—Where the plaintiff introduces evidence of an act tending to show negligence in the treatment of the slave—*e. g.*, his removal by railroad, while sick—the defendant has the right to prove that he acted under the advice of a physician.

4. *When sub-hirer is competent witness for his bailor.*—If the complaint is so framed as to authorize a recovery only for the negligence of the defendant himself, a person to whom he re-hired the slave during the term, and in whose possession the slave died, is a competent witness for him; *aliter*, if the complaint would also authorize a recovery for the negligence of the witness.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THIS action was brought by John M. Burke against the appellant, and the complaint was in these words:—

"The plaintiff claims of the defendant $1,500, damages for

the price or value of a negro man slave, named Allen, which said slave was hired by the plaintiff to the defendant, on the first day of January, 1852, at the special instance and request of the defendant, to work on said railroad as a laborer ; but the said defendant removed said slave from work on said road, and hired him to work with a mill company, *being other and different employment from that for which he was hired by the plaintiff to the defendant;* and thereby, then and there, the said slave became and was sick, sore, and maimed, and was then and there neglected, and not attended to by the said defendant, having him in charge ; and in consequence of such sickness and neglect, he, the said slave Allen, afterwards, to-wit, on the 25th day of December, 1852, then and there died ; to the plaintiff's damage $1,500," &c.

After the argument of the cause had been commenced, the court allowed the plaintiff, on motion, to amend his complaint by striking out the words above italicized ; and to this the defendant excepted.

On the trial, the plaintiff offered in evidence the written contract between himself and the defendant, for the hire of the slave Allen, during the year 1852, at the price of $200. By the terms of this contract, the railroad company promised to clothe the slave, and it was agreed that a deduction should be made for any loss of time caused by his running away ; but no stipulation was made concerning the business in which he was to be employed. It appeared in evidence, from testimony adduced by the plaintiff, that the slave was employed as an ox-driver during the first part of the year, in hauling saw-logs to the defendant's steam-mill near Selma ; that in June the mill was moved higher up on the railroad, into the county of Perry, and there put under the control of the "Bibb County Steam-mill Company", an incorporated company, to whom the slave was re-hired for the remainder of the year ; that the slave Allen was still employed as an ox-driver, so long as he was able to work ; that in the latter part of November he became sick, and was sent down on the railroad to Selma ; that the night on which he was sent down was cold, damp, and inclement ; that one Marlow, in Selma, who had been requested by the plaintiff to pay attention to his negroes hired on the railroad, removed him that night to his own

house, and called in a physician on the next morning, who pronounced his disease dropsy of the chest; and that the slave died within forty hours afterwards.

Evidence was offered by both parties, showing the condition of the shanties in which the railroad hands were lodged, the manner in which they were fed and clothed, and the opinions of different physicians as to the symptoms, treatment, &c., of the slave Allen; but as none of these matters enter into the opinion of the court, it is unnecessary to take further notice of them. The defendant offered Dr. Fair as a witness, and proposed to prove by him "that the manager of said steam-mill company, and the person who had control of Allen, (who was ruled by the court to be incompetent to testify in this case,) consulted with witness, as a physician, to procure his advice as to the propriety of sending Allen to Selma for medical treatment; and that, on this consultation, witness advised that Allen should be sent to Selma, as he was. It appeared that the physician did not see Allen, but that his condition, as understood by said manager, was described to the witness. The plaintiff objected to this testimony, and the court sustained his objection; to which the defendant excepted."

The defendant offered one Houston as a witness, who was proved to be a member of said steam-mill company; but the court sustained an objection to his competency on that ground, and the defendant excepted.

The defendant asked the following charges to the jury :—

"1. If the jury believe from the evidence, that those who had the charge and control of the slave Allen, used and exercised that degree of care and attention, which the generality of men use in relation to their own slaves, under similar circumstances, the defendant is not chargeable with neglect of said slave. This charge the court refused, and the defendant excepted.

"2. If the jury believe from the evidence that the slave Allen had a latent chronic disease, which was on him at the time of the hiring, and continued down to his death, the defendant was not bound to use more than ordinary diligence in the discovery and treatment of the disease; and if it required skill to ascertain and detect the disease, beyond that

which is common to men of ordinary knowledge,—then, not employing a physician is not evidence of negligence. The court refused this charge alone, but gave it with this qualification : 'That if the slave was manifestly sick, and the defendant did not know what was the matter with him, it was the duty of the defendant to call a physician, and not to do so was neglect.' To the refusal to give this charge as asked, and to the qualification given, the defendant excepted.

" 3. The jury must be satisfied from the evidence, not only that there was negligence on the part of the defendant, or of those having charge of the slave, but that the death of the slave was the result of that negligence, before the defendant could be made liable for his death. This charge the court refused to give alone, but gave it with this qualification : ' That if the negligence related to the disease of which the slave died, then it would be culpable, and the defendant would be chargeable with it.' To the refusal to give this charge as asked, and to the qualification given, the defendant excepted."

All these rulings of the court are now assigned for error.

LAPSLEY & BYRD, and JOHN T. MORGAN, for appellant:

1. The evidence of Dr. Fair ought not to have been excluded. As the act of sending the slave by railroad to Selma was relied on by the plaintiff below to show neglect, it was certainly competent for the defendant to show that he acted on the advice of a physician, in order to rebut the idea that it was carelessly and unadvisedly done.

2. The court erred in sustaining the objection to the competency of the witness Houston. The rule which excludes a servant from testifying to discharge his master from liability for his negligence, does not apply to this case, for, if the action is founded on the idea that the steam-mill company was the servant of the railroad company, the facts would not authorize a recovery.—Cook & Scott v. Parham, 24 Ala. 21; Walker v. Bolling, 22 ib. 294. The steam-mill company was the agent of the railroad company to control the slave ; and this being the case, the members of the former company were competent witnesses for the latter, for the reason which makes all agents competent witnesses—to-wit, from the necessity of the case.—Bean v. Pearsall, 12 Ala. 592. But if

the steam-mill company was neither the servant nor the agent of the railroad company, still the members of the former company would be competent witnesses for the latter, in such a case as this, because there is no such privity between them, either in law or by contract, as would make the judgment, whether in favor of or against one of them, evidence for or against the other.—Crutchfield's Heirs v. Hudson, 23 Ala. 393; Jones v. Park, 1 Stew. 419; Poe v. Dorrah, 20 Ala. 288. In any point of view, the witness is competent; his liability to the railroad company being counterbalanced by his liability to the plaintiff for the same act of negligence.

3. The court erred in refusing the first charge asked by the defendant below, which asserts the clear and just principle, that if those " who had charge and control of the slave, used and exercised that degree of care and attention which the generality of men use in relation to their own slaves under similar circumstances", the defendant would not be chargeable with neglect.—Story on Bailments, § 399; Jones on Bailments, 88; Batson v. Donovan, 4 Barn. & Ald. 21; Reeves v. Constitution, Gilpin's R. 579–85; Salter v. Hurst, 5 Miller's (La.) R. 79; 2 Brod. & Bing. 359; 2 Kent's Com. 586.

4. The court erred, also, in refusing the second charge asked, and in the qualification given. A slave might be manifestly sick, and yet the hirer (or owner) act perfectly right in not sending for a physician, although he might not know the nature of the disease.

5. The court erred, also, in refusing to give the third charge asked, and in the qualification given. To render the defendant liable for the death of the slave, the death must have been caused by his neglect.—2 Kent, 587; Runyan v. Caldwell, 7 Humph. 135; Mims v. Mitchell, 1 Texas R. 443.

WM. M. MURPHY and J. H. CAMPBELL, contra:

1. The testimony of Dr. Fair was properly excluded; 1st, because it would be enabling the defendant to make testimony for itself, through its agents or servants; and, 2dly, because it would be but the adoption by the witness of the opinion of an unprofessional man, as to the condition of the slave and what he required.—1 Greenl. Ev. § 110; Mobley v. Barnes, 26 Ala. 718.

2. The testimony of Houston was properly rejected, as he was a party in interest.—Code, § 2403; Walker v. McCraw, 26 Ala. 189.

3. The rule as to negligence, in such a case as this, is, that the hirer is bound to use such diligence and attention as men of ordinary care and prudence take of their own property, and is equally responsible for the acts of his servants.—Cook & Scott v. Parham, 24 Ala. 21; Story on Bailments, §§ 398, 399, 400; Scudder v. Wallbridge, 1 Kelly's (Geo.) R. 199. Tested by this rule, there was no error in the charges given, nor in the refusals to charge as requested.

RICE, J.—Where the contract of hiring is general in its terms, and does not restrict the employment of the slave to any particular business, the hirer has the right to re-hire him to another, " being responsible to the owner for his proper treatment, and for his not being employed otherwise than is authorized by the scope of his agreement with the owner." Seay v. Marks, 23 Ala. R. 532.

The hirer is not only liable for his own personal negligence, but for the negligence of the person to whom he re-hires the slave.—Story on Bailments, § 400. But in either case, he is responsible only for the omission of that diligence and care which the generality of mankind use and exercise in relation to their own slaves under similar circumstances.—Story on Bailments, §§ 398, 399.

This is the only just rule to apply to a contract of hiring which is general in its terms. It rests upon the ground, that each party to such a contract knows the degree of care used by the generality of mankind in relation to their own slaves, and that each is satisfied silently to take that degree of care as part of their contract. If the owner desires a higher degree of care, he should inform the hirer of it, and bind him to its exercise by a contract special in its terms.

The law does not make it the duty of the hirer, under a contract general in its terms, to call a physician on every occasion when the slave is manifestly sick and the hirer does not know what is the matter with him. Nor does the law, under such a contract, pronounce the hirer guilty of neglect, merely because the slave was manifestly sick and he did not know what was the matter with him, and did not call a phy-

sician. Under such a contract, the law will not do or say anything inconsistent with the rule above stated—to-wit, that the hirer is responsible only for the omission of that diligence and care which the generality of mankind use and exercise in relation to their own slaves under similar circumstances. Whether there may not be cases, under such a contract, where, under all the circumstances, the failure to call in medical assistance, would, in law, amount to a want of ordinary diligence,—we do not decide.

To sustain the allegation of neglect, the plaintiff, among other things, gave in evidence the fact that the slave, whilst sick, was removed from the steam-mill in Perry county to Selma, by railroad. After this evidence was given by the plaintiff, the defendant had the right to explain (if he could), by evidence, why the slave was so removed whilst he was sick. For this purpose, the testimony of Dr. Fair, as offered by defendant and excluded by the court, was clearly admissible.—Goodgame v. Cole, 12 Ala. R. 77; Yarbrough v. Moss, 9 ib. 387; Leaird v. Davis, 17 ib. 28; Pitts v. Burroughs, 6 ib. 733; Dearing v. Moore, 26 ib. 586.

In determining the competency of a witness, regard must be had to the issue joined between the parties. The competency of Houston as a witness for defendant in this case, without a release, depends on the question, whether the plaintiff's complaint, in its present shape, does not exclude him from recovering under it for the negligence of the steam-mill company. We shall decline now to decide this question, because it is evident to us that the plaintiff can, and ought, so to amend his complaint as to avoid it altogether. If the complaint is so framed as to authorize the plaintiff to recover of the defendant damages for the negligence of the steam-mill company about the slave, then, under such a complaint, Houston is not a competent witness for the defendant, without a release; he being a member of that company, and liable over to defendant if plaintiff recovers of the defendant.—1 Greenl. Ev. §§ 393 to 397; Otis v. Thom, 23 Ala. R. 472. If, however, the plaintiff's complaint is so framed as to exclude him from recovering for anything but the *personal negligence* of the defendant, then, under such complaint, Houston is a competent witness for defendant.

We deem it unnecessary to decide any other questions presented by the record, except those hereinabove considered and decided. From what we have above decided, it is clear the court below erred in several particulars. Its judgment is reversed, and the cause remanded.