## HALL vs. GOODSON.

[TRESPASS BY OWNER AGAINST HIRER OF SLAVE.]

1. *When action lies.*—Trespass lies against the hirer of a slave, in favor of the owner, for injuries inflicted during the term by cruel and unreasonable whipping.

2. *Waiver of right of action.*—The receipt by the owner of the hire for the entire term, with knowledge of the fact that the hirer had inflicted a cruel and unreasonable whipping on his slave, is not an implied waiver of his right to maintain trespass for the injury, though it would prevent a recovery by him for any consequent loss of the slave's labor during the term.

3. *Relevancy of evidence in mitigation.*—The fact that the slave had resisted a third person, who attempted to arrest him as a runaway, is not admissible evidence for the defendant in such action, when it is not shown that the fact had been communicated to him at the time of the alleged trespass.

4. *Opinion and conclusion.*—A planter, who has had the government of slaves for a number of years, and who is well acquainted with their management, cannot be asked, when examined as a witness in an action of trespass for the cruel whipping of a slave, "whether the appearances presented by the slave were such as a reasonable whipping would produce;" nor "whether the use of a large cowhide in punishing a slave, so as to produce wales on him which could be seen a year afterwards, was not an unusual and cruel whipping."

5. *Proof of custom as to punishment of slaves.*—Where the question is, whether a punishment inflicted on a slave was reasonable or cruel, it is competent to prove the rule, if there be any, among slaveholders generally, in correcting their slaves.

6. *Relevancy of evidence as to character of punishment of slave.*—A witness, who had seen and examined the slave alleged to have been cruelly whipped, cannot be asked, "whether he had ever before seen a slave with such appearances on him."

APPEAL from the Circuit Court of Autauga.

Tried before the Hon. E. W. PETTUS.

THIS action, which was commenced in September, 1856, was brought by Dixon S. Hall, against Elias B. Goodson, to recover damages for injuries inflicted by defendant on a slave named Simon, the property of the plaintiff. The slave was hired by plaintiff to defendant, for the year 1855, at the price of $120; and the injuries complained of were inflicted by the defendant in June of that year, as a punishment for the slave's running away. There was no direct proof of the fact that the injuries were inflicted by the defendant; but it appeared that, on the slave being caught by one Carpenter and others as a runaway, and delivered to the defendant bound, "he took the slave away, saying that he intended to whip him with a cowhide (one of the largest kind) which he had in his hand;" that the slave again ran away, and returned to his master, some two weeks afterwards; that he then bore on his back, arms and legs, the marks of a severe whipping; and that some of the scars and wales were plainly visible on his body for a year after that time. It appeared, also, that the plaintiff retained the possession of his slave for the remainder of the year 1855, and did not allow him to return to the defendant; "that the market value of the slave was permanently injured, from $100 to $300, by reason of the scars left on his body, though his capacity for labor was only impaired for a month or two;" that after the close of the year 1855, and before the commencement of this suit, the defendant paid in full, to the plaintiff's attorney, the note given for the year's hire; and that the plaintiff, when he received the money on the note, "was fully acquainted

with the nature and extent of the injuries inflicted on the slave, and of the circumstances under which they were inflicted."

The defendant introduced a witness who testified, "that he arrested said slave as a runaway, a short time before June, 1855, on a plantation where he was acting as overseer;" and then asked the witness, "whether or not said slave resisted him when arrested." The plaintiff objected to this question, but the court overruled his objection, and allowed the question to be put. The witness answered, "that the slave ran away from him when arrested, and, when he was about to overtake him, seized a pine-knot, and attempted to strike witness with it." The plaintiff objected to this answer also, but the court overruled his objection. The bill of exceptions says, "there was no evidence that this fact was communicated to the defendant." To both of these rulings of the court the plaintiff reserved exceptions.

The plaintiff introduced a witness who stated, "that he had owned and governed slaves for the last forty years, and was well acquainted with the management of slaves, and knew what was reasonable and correct whipping for slaves; and that he had seen and examined the boy Simon about two weeks after he was delivered by Carpenter to the defendant." The plaintiff then proposed to ask this witness the following questions: "whether the appearances presented by said slave were such as a reasonable whipping would produce;" "whether he had ever before seen a slave with such appearances on him;" and, "whether the use of a cowhide in punishing a slave, so as to produce wales on the arms two or three inches long, and as large as his finger, which could be seen on him a year afterwards, was not an unusual and cruel whipping." The court sustained objections to each of these questions, and would not let them be asked or answered; and the defendant reserved exceptions to its rulings, which are numbered 2, 3, and 4.

The court charged the jury as follows: "That if the plaintiff hired the slave Simon to the defendant, for the year 1855, for $120; and the defendant took possession

of the slave under said contract, and in June, 1855, whilst the slave was in his possession, inflicted a cruel punishment on the slave; and the plaintiff was soon afterwards informed of the nature and extent of the injuries inflicted by the defendant on the slave, and of the circumstances under which the punishment was inflicted; and, after the note for the hire of said slave became due, but before the commencement of this suit, received from the defendant the full amount of the slave's hire for the entire year—then the plaintiff cannot recover in this action."

The plaintiff excepted to this charge, and took a nonsuit, which he now moves to set aside; assigning as error all the rulings of the court to which he reserved exceptions.

ELMORE & YANCEY, with W. H. NORTHINGTON, for the appellant.—1. The owner of a hired slave may maintain trespass against the hirer, for an illegal and forcible injury done to the slave while in the hirer's possession.—Nelson v. Bondurant, 26 Ala. 341; Rasco v. Willis, 5 Ala. 38.

2. The reception of the hire for the entire term is not an implied waiver of the right of action for the trespass. The cases in which the doctrine of waiver has been applied, were actions of trover, which are essentially different from trespass. A recovery in trover can only be had for a conversion, which destroys the plaintiff's property; while the payment and receipt of hire after the conversion show a continuing property in the plaintiff, which cannot exist unless the tort has been waived. But trespass supposes a continuing property in the plaintiff, and seeks to recover damages for an injury to it. The owner had a right to take away his slave on account of the trespass, and yet hold the hirer liable for the entire hire.—Pettigrew v. Bishop, 3 Ala. 440; Givhan v. Dailey, 4 Ala. 336. The commission of the trespass does not discharge the hirer from liability on his contract, nor does the receipt of hire under the contract estop the owner from maintaining an action for the trespass.

3. The fact that the slave, on a former occasion, when arrested by another person, resisted being captured, was

not relevant to any of the issues in the case. As that fact had not been communicated to the defendant, it could not have influenced his conduct.

4. The court erred in refusing to allow plaintiff's witness to answer the questions propounded to him. The witness was shown to have such knowledge of the subject as made his opinion competent evidence, and there was no other mode of proving the facts sought to be elicited.

WATTS, JUDGE & JACKSON, *contra.*—1. By the contract of hiring, the hirer became the owner of the slave for the entire term, subject only to the owner's right to put an end to the contract on account of some breach of duty by the hirer.—Smith v. Hooks, 19 Ala. 102; Mosely v. Wilkinson, 24 Ala. 416.

2. To maintain trespass, the plaintiff must have, at the time of the injury, either the actual possession, or the immediate right of possession.—Young v. Davis, 20 Ala. 152, and authorities there cited. At the time of the commission of the alleged trespass, the plaintiff had neither the actual possession, nor the immediate right of possession. Conceding that the injury inflicted on the slave authorized him to put an end to the contract of hiring, and sue in case or trover for the injury; still the injury must be consummated before that right accrues to him— the right is consequent upon, and subsequent to the injury, and will not sustain an action which presupposes an immediate right of possession.

3. But the plaintiff's right of action, if any existed, was waived by his receipt of the hire for the entire term, with full knowledge of the facts attending the commission of the alleged trespass. His right to maintain any action for the injury depended upon the exercise of his right to treat the contract as ended on account of the hirer's breach of duty. He cannot treat the contract as subsisting and as at an end at one and the same time. Consequently, any act on his part, which shows that, with full knowledge of the facts, he elected to treat the contract as still subsisting, is a waiver of his right to main-

tain any action whatever for the injury.—Mosely v. Wilkinson, 24 Ala. 411; S. C., 30 Ala. 562; Firemen's Ins. Co. v. Cochran, 27 Ala. 228.

4. Any fact which tends to show that, in order to subdue the slave, it was necessary to inflict a punishment more severe than usual, is relevant evidence in such an action as this.—Bolling v. Wright, 16 Ala. 664.

5. The questions propounded to plaintiff's witness called for his opinion on the very question which the jury had to decide, and were properly ruled out by the court.

STONE, J.—Whether, under the facts in this case, the action for the redress of the grievances complained of should be trespass or case, is by far the most important question presented by the record. The case of Nelson v. Bondurant, 26 Ala. 341, is full to the point, that when the contract of hiring contains no express stipulations as to the treatment of the slave, the owner delegates to the hirer the same right to punish and correct the slave which he himself has; but, if the punishment inflicted by the hirer, when considered with a just regard to all the attendant circumstances, is either cruel or barbarous, he becomes a trespasser *ab initio*, and liable to damages at the suit of the owner.

Passing over all consideration of the above principle, it is contended that the plaintiff in this case has precluded himself from maintaining the action of trespass, by accepting hire for the slave for the whole year; for the time which elapsed after the injury complained of, as well as before. The argument is, in substance, as follows: that conceding the hirer, by cruel treatment, armed the owner with power to re-possess himself of the slave, and thus put an end to the hiring; yet, by accepting hire for the unexpired time, he waived this right, and, by implication, agreed that the hirer had the right to the possession of the slave for the whole year; that the owner not having the right to the possession of the slave at the time of the injury, if he can maintain any action, it is case, and not trespass. This question must depend on the na-

ture and extent of the right which the owner of a slave parts with to the hirer.

The leading case in the United States on this question, is Hilton v. Caston, 2 Bailey, 95. That case was precisely like the present in its legal principles, except that the report does not inform us whether the owner received hire for any time after the alleged injury. The action was trespass, and the court of appeals of South Carolina held that it was properly brought. Judge O'Neall, in delivering the opinion of the court, said: "One general distinction between the action of trespass and case is, that when the plaintiff's right of possession is in reversion, the action must be case and not trespass. But this contemplates that the party has parted for the time with his entire interest in the thing; or that the injury is such an one as only affects the rights of the possessor. If the owner *reserves a right in his property*, or places it in the hands of another for any qualified purpose, such as carrying or safe keeping, or the use or hire, and it is injured by any immediate and forcible act, destroying or materially injuring the thing itself, trespass may be sustained." After admitting that there was no express authority for the application of this rule to personal property, he adds: "If a landlord lease land, and in the lease reserve the trees; and they are cut down by the tenant or a stranger, he can support trespass. Why? Because he has reserved the right. So, if one grant the use of his real estate for a particular purpose, and it is used for a different one, trespass is the proper remedy. *    *    * The owner in this case has parted with his dominion over the soil, for a given purpose; but, as to all others, it is reserved; and hence it is that for this abuse of his right he can maintain trespass."

After a very well considered argument, the judgment of the court was that trespass would lie. See, also, Barclay v. Howell, 6 Peters, 513; Tennent v. Dendy, Dudley's Law and Equity, 83.

In Spivey v. The State, 26 Ala. 90, 101, this court said: "'The property of the owner, in a slave hired or bailed by him to another, is recognized by law. *    *    *

The law has established bounds between the interest of the bailor and bailee in the thing bailed."

Our predecessors have several times quoted the case of Hilton v. Caston approvingly; and they have also expressly asserted, that if the hirer employ the slave in an illegal business, or inflict upon him such cruel punishment as is not within the spirit of the contract of hiring, the owner may put an end to the bailment, and re-possess himself of his slave.—Nelson v. Bondurant, *supra;* Rasco v. Willis, 5 Ala. 40; Hogan v. Anderson, 6 Ala. 472; Gillian v. Senter, 9 Ala. 395; Tucker v. Magee, 18 Ala. 99; Smith v. Hooks, 19 Ala. 101; Wilkinson v. Mosely, 24 Ala. 411. See, also, 2 Greenl. Ev. § 614; Sanborn v. Coleman, 6 N. H. 14; 9 *Bouv. Bacon's Abr.* 455; Siderfin, 438; Cooper v. Willomatt, 1 M. G. & Scott, 672.

We are fully satisfied with the principle settled in Nelson v. Bondurant, and adhere to it. It results, that if the owner had not received hire for the whole year, his right to sue in trespass could not be questioned.

In this case, the owner did, in effect, assert his right to put an end to the hirer's possession, by retaining the slave after he returned to him. He had, then, under the authority of Nelson v. Bondurant, a right to bring the action of trespass against the hirer at any time afterwards, at least until he accepted the full hire, after the close of the year. The question whether he was entitled to the whole of the hire is not presented by this record, and it is not proper we should consider it. See Rasco v. Willis, *supra;* Davis v. Ayers, 9 Ala. 292; Martin v. Everett, 11 Ala. 375. The question in this case is only important, as bearing on the plaintiff's right to maintain trespass.

[2.] After due consideration, we are satisfied that the receipt of the full hire cannot be regarded as a waiver of the owner's right to maintain the action of trespass. It was certainly not an express waiver. That it was not an implied waiver, we think, grows out of the mutual interests in the slave which the owner and hirer had under the contract. The hirer had the right to the services of the slave, and the right to inflict on him reasonable correction. If he transcended these bounds, he invaded a right of the

owner for which he had not bargained; a right which the owner had not parted with. Under the authority of Hilton v. Caston, *supra*, this reserved right in the owner authorized him to maintain trespass for its invasion. Under this principle, we cannot perceive that the plaintiff's right of action would have been any the less perfect, if he had permitted the slave to remain with the hirer for the entire year. If he had done so, and had then received full hire, it would not be contended, we apprehend, that this would operate a release of the damages, caused by unreasonable correction or abuse.

In McLane v. Miller, 12 Ala. 643, Miller had hired slaves for the year 1842. In August of that year, the slaves were seized by McLane, who was coroner, and were not afterwards returned to Miller. On a suit for the hire of the slaves, Miller defended on account of the time lost by the slaves in consequence of the seizure by the coroner, and to that extent recouped the damages. He also sued McLane in trespass for taking and carrying away the slaves; and the question was, whether the recoupment of damages by him was an answer to his action of trespass. This court held that it was not; but that he could still "recover for the injury caused by the trespass, having no connection whatever with the loss of time of the slaves."

In vindication of the correctness of these views, let it be supposed that, during the term for which a slave is let to hire, a third person inflicts on him a permanent injury, or takes his life. Will any one contend in such case that the owner could not maintain trespass against the wrong-doer? On what principle could he maintain this action? Evidently, because he had not parted with his entire interest in the property. In other words, his right, to this extent, is not that of a remainder-man, which is consequential, but is in the nature of that of a landlord who has parted with only a qualified interest.—Tennent v. Dendy, Dudley's Law and Equity, 83; Shaw v. Beers, 25 Ala. 449.

The principle settled in Mosely v. Wilkinson, 24 Ala. 411, is entirely unlike this. In that case, it was said,

that if a slave is hired for a particular service, and is afterwards employed in a different one, this is a conversion, for which the owner may bring trover; but if, with a knowledge of such conversion, he afterwards receive hire for the entire year, this is a waiver of the conversion. The same principle was again asserted in Wilkinson v. Mosely, at the last term. Now, the conversion complained of in the case cited hinged entirely on the breach of contract, in employing the slave in a service different from that specified in the contract, and not on any alleged *actual* injury to the slave, as the result of the change of employment. Under the count in trover, no question was or could be raised on the relative perils attending the one or the other service. The conversion was complete on the change of service, and could not be rendered either more or less a conversion, by any conseqent injury or improvement of the actual value of the slave. Whether there was an *actual* loss, or a permanent injury of the slave, as a *consequence* of placing her in a less healthy locality, or employing her in a service more dangerous to her life or health, was a question not considered in that case.

In this case, the complaint is that the slave is permanently impaired in value. If this be true, this injury did not expend its force during the year for which the slave was hired, but left him at the end of the year materially less valuable than he was before its infliction. Its nature was not that of an injury to the possession—a mere constructive loss to the owner—but a real loss in the value of the property itself.

On this subject of implied waiver from the receipt of the entire hire, it may be a question if this is not a two-edged sword. If the owner, without cause, retook and retained the slave after letting him to hire for the year, he thereby forfeited his right to recover any portion of the hire. See Givhan v. Dailey, 4 Ala. 336; Martin v. Everett, 11 Ala. 375. Yet, after losing the services of the slave for near or quite half the year, and that loss chargeable to the direct interference of the owner, the hirer voluntarily paid the entire hire. May it not be contended, with

Hall v. Goodson.

at least equal plausibility, that this is an admission by the hirer of the owner's right to retake and retain the slave? We do not, however, decide this question at present.

Should the plaintiff recover in this action, then the question of the receipt of hire for the time after the whipping will become important. Having received the hire, the owner will not be permitted to recover for any consequent loss of the labor of his slave during the year for which he was hired.

[3.] We cannot perceive on what principle the defendant was permitted to give in evidence the fact that the slave resisted Carpenter when he undertook to capture him. It does not appear that Goodson, the hirer, was informed of this act of resistance; and, of course, an unknown offense by the slave could not justify excessive whipping, or mitigate the damages caused by it. It was not a proper means of proving general character. Particular acts are not admissible for this purpose.

[4.] We do not think the court committed any error, in refusing to permit the questions of plaintiff, numbered 2 and 4, to be answered. The conclusions sought to be elicited by them, are not of the class which this witness should have been allowed to draw. Perhaps, a physician would be heard to give his opinion of the nature and severity of the blows which caused the wales or whelks observable on the slave's body. A planter, who has simply had the control of slaves, is not necessarily an expert for such a purpose. We may further remark, that the character of the whipping—whether reasonable or cruel —was the very question on which the jury had to pass in making up their verdict. This question depends on the "attendant circumstances," and is not a simple or collective fact, of which a witness can give direct evidence. It is rather a conclusion to be drawn from facts.

[5.] In thus laying down the rule, we do not wish to deny to the jury the right to draw their own conclusions, based on the evidence, and aided by their observation and experience in such matters. Neither do we deny to the witnesses the right to give their best judgment of the number of stripes which the slave had received, pred-

icated on the marks which he bore. We hold, also, that it was competent to prove the rule of the generality of slaveholders in correcting their slaves, if there be such a rule. See, on these points, Campbell v. The State, 23 Ala. 44; Ala. and Tenn. Rivers R. R. v. Burke, 27 Ala. 535; Wilkinson v. Mosely, 30 Ala. 562.

[6.] The question marked 3 was improper, and the court did right in sustaining the objection to it. The answer could only have shown what the witness had seen, and could not aid the jury in determining the question of reasonable or cruel whipping.

For the errors above pointed out, the judgment of the circuit court is reversed, the non-suit set aside, and the cause remanded.